[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 368.]

THE STATE OF OHIO, APPELLANT, *v.* WEITBRECHT, APPELLEE.

[Cite as *State v. Weitbrecht*, 1999-Ohio-113.]

*Criminal procedure—Involuntary manslaughter—R.C. 2903.04(B), as applied to a minor misdemeanor traffic offense which results in a vehicular homicide, does not violate the Eighth Amendment to the United Constitution or Section 9, Article I of the Ohio Constitution.*

R.C. 2903.04(B), as applied to a minor misdemeanor traffic offense which results in a vehicular homicide, does not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution.

(No. 98-2144—Submitted May 26, 1999—Decided September 8, 1999.)

CERTIFIED by the Court of Appeals for Holmes County, No. 97CA588.

————————————

{¶ 1} On July 17, 1997, defendant-appellee, Nancy Weitbrecht, was indicted on two counts of involuntary manslaughter, in violation of R.C. 2903.04(B), for the deaths of Donald J. Greer and Vera J. Carroll. The involuntary manslaughter charges arose out of an automobile collision in which the appellee's motor vehicle, which was travelling west on State Route 62 in Holmes County, went left of center in a no-passing zone and struck a vehicle head-on in the eastbound lane. As a result, two passengers from appellee's vehicle (Donald Greer and appellee's husband, Merlyn P. Weitbrecht) were killed, as well as one passenger from the eastbound vehicle (Vera Carroll). The bill of particulars alleged that appellee had violated any of four underlying minor misdemeanor traffic offenses: operating a motor vehicle without reasonable control (R.C. 4511.202); failing to operate a motor vehicle on the right half of the roadway (R.C.

4511.25[A]); operating a motor vehicle left of center (R.C. 4511.29); and failing to obey hazardous zone markings (R.C. 4511.31).

{¶ 2} Appellee filed a motion to dismiss the indictment, arguing that Ohio's involuntary manslaughter statute (R.C. 2903.04[B]), when based upon a minor misdemeanor, violates the Cruel and Unusual Punishment Clauses of both the United States and Ohio Constitutions.[1] The trial court granted appellee's motion to dismiss the indictment. The court found a gross disproportionality between the underlying minor misdemeanor offense and the potential punishment. The court also found that the offense and the potential penalty were disproportionate when compared to other similar crimes in Ohio and to crimes in other states.

{¶ 3} The court of appeals affirmed. Finding its decision in conflict with decisions of the Eleventh Appellate District in *State v. Stanford* (Sept. 23, 1996), Trumbull App. No. 95-T-5358, unreported, 1996 WL 537856, and the Twelfth Appellate District in *State v. Garland* (1996), 116 Ohio App.3d 461, 688 N.E.2d 557, the court of appeals entered an order certifying a conflict.

{¶ 4} This cause is now before this court upon our determination that a conflict exists.

———————————

*Stephen D. Knowling,* Holmes County Assistant Prosecuting Attorney, for appellant.

*Kennedy, Cicconetti & Knowlton* and *David C. Knowlton,* for appellee.

*Betty D. Montgomery*, Attorney General, and *Kimberly L. Charles*, Assistant Attorney General, urging reversal for *amicus curiae,* state of Ohio.

*Harry R. Reinhart*, urging affirmance for *amicus curiae,* Ohio Association of Criminal Defense Lawyers.

---

1. Appellee also argued that R.C. 2903.04(B) violates the Equal Protection Clauses of the United States and Ohio Constitutions, and raised two nonconstitutional issues in her motion to dismiss. However, none of those issues is before this court.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 5} The issue certified for our review is, "Does Ohio's involuntary manslaughter statute [R.C. 2903.04(B)] as applied to a minor misdemeanor traffic offense which results in a vehicular homicide violate the Eighth Amendment to the United States Constitution and Section 9, Article [I] of the Ohio Constitution?" For the reasons that follow, we answer the certified question in the negative.

{¶ 6} R.C. 2903.04 provides, in relevant part:

"(B) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor.

"(C) Whoever violates this section is guilty of involuntary manslaughter. * * * Violation of division (B) of this section is a felony of the third degree."

{¶ 7} A third degree felony carries the potential penalty of one to five years in prison and a fine of up to $10,000. (R.C. 2929.14[A][4]; 2929.18[A][3][c].)

{¶ 8} Appellee successfully argued to the lower courts that the potential penalty imposed for a violation of R.C. 2903.04(B) is disproportionate to the crime committed (a minor misdemeanor), and is violative of the constitutional prohibition against cruel and unusual punishments. We are now asked to decide whether the lower courts were correct in finding that R.C. 2903.04(B) violates the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution. In resolving this issue, we are mindful that legislative enactments are to be afforded a strong presumption of constitutionality. *State v. McDonald* (1987), 31 Ohio St.3d 47, 48, 31 OBR 155, 156, 509 N.E.2d 57, 59. Any reasonable doubt regarding the constitutionality of a statute must be resolved in favor of the legislature's power to enact the law. *Id.* Thus, the legislation will not be struck down unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d

926, 928; *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38-39, 616 N.E.2d 163, 166.

{¶ 9} The Eighth Amendment to the Constitution of the United States provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9, Article I of the Ohio Constitution is couched in identical language. Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. *Robinson v. California* (1962), 370 U.S. 660, 676, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758, 768. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 30 O.O.2d 38, 203 N.E.2d 334, this court stressed that Eighth Amendment violations are rare. We stated that "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." *Id.* at 70, 30 O.O.2d at 39, 203 N.E.2d at 336. Furthermore, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *Id.* See, also, *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus.

{¶ 10} The United States Supreme Court has also discussed the concept of whether the Eighth Amendment requires that sentences be proportionate to the offenses committed. An Eighth Amendment challenge on these grounds was initially applied only in cases involving the death penalty or unusual forms of imprisonment. *Enmund v. Florida* (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140; *Weems v. United States* (1910), 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. Then, in *Solem v. Helm* (1983), 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649, the court applied the Eighth Amendment to reverse a felony sentence on proportionality grounds, finding that "a criminal sentence must be

proportionate to the crime for which the defendant has been convicted." In so holding, the *Solem* court set forth the following tripartite test to review sentences under the Eighth Amendment:

"First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 290-291, 103 S.Ct. at 3010, 77 L.Ed.2d at 649-650.

{¶ 11} More recently, in *Harmelin v. Michigan* (1991), 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836, the United States Supreme Court revisited the issue of proportionality as it relates to the Eighth Amendment. In *Harmelin*, the court was asked to decide whether a mandatory term of life imprisonment without possibility of parole for possession of six hundred seventy-two grams of cocaine violated the prohibition against cruel and unusual punishments. In finding no constitutional violation, the lead opinion rejected earlier statements made in *Solem v. Helm* and stated that the Eighth Amendment contains no proportionality guarantee. However, this statement failed to garner a majority. The three Justices who concurred in part would refine the *Solem* decision to an analysis of "gross disproportionality" between sentence and crime. As stated by Justice Kennedy in his opinion concurring in part, "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S.Ct. at 2705, 115 L.Ed.2d at 869.

{¶ 12} With these principles in mind, we now turn to the case at hand. Appellant contends that R.C. 2903.04(B), as applied to a minor misdemeanor traffic offense, does not constitute cruel and unusual punishment because its potential

penalty for causing the death of another is not disproportionate to the offense committed and does not shock the community's sense of justice. Appellant relies on *State v. Stanford* (Sept. 23, 1996), Trumbull App. No. 95-T-5358, unreported, 1996 WL 537856, and *State v. Garland* (1996), 116 Ohio App.3d 461, 688 N.E.2d 557, to support its position. The *Stanford* decision is of little value in helping us resolve this issue because the court was without a sufficient basis to review the issue. However, the *Garland* court did fully consider the issue. In *Garland*, the defendant was convicted of involuntary manslaughter with the underlying minor misdemeanor of failure to stop at a stop sign and was sentenced to a term of five to ten years. The court held that "[t]he sentence imposed by the trial court falls within the range of punishments contained within the sentencing statute for this offense. There is no evidence to suggest that appellant's sentence would shock the conscience of the community. * * * Accordingly, the punishment imposed cannot be deemed cruel and unusual." *Id.* at 466, 688 N.E.2d at 561.

{¶ 13} In contrast, appellee argues that the court of appeals' decision was correct and urges us to follow the appellate decisions of *State v. Campbell* (1997), 117 Ohio App.3d 762, 691 N.E.2d 711, and *State v. Shy* (June 30, 1997), Pike App. No. 96 CA 587, unreported, 1997 WL 381782, which used the tripartite test set forth in *Solem* to find that R.C. 2903.04(B) violates the Cruel and Unusual Punishment Clauses of the United States and Ohio Constitutions. In these decisions, the courts found that the potential punishment for committing a minor misdemeanor traffic offense is grossly disproportionate to the crime. Furthermore, the courts found that the potential sentence under R.C. 2903.04(B) was excessive when compared to similar related Ohio crimes that require a greater degree of culpability (such as negligent homicide, vehicular homicide, and aggravated vehicular homicide), and when compared with other jurisdictions. These decisions also relied, in part, on dictum from our decision in *State v. Collins* (1993), 67 Ohio St.3d 115, 117, 616 N.E.2d 224, 225, which questioned the policy behind applying

6

the involuntary manslaughter statute to include minor misdemeanors as predicate offenses.

{¶ 14} At the outset, we reject appellee's reliance on the *Collins* decision. In *Collins*, we interpreted the statutory language of former R.C. 2903.04(B), which stated that it applied to "misdemeanors." Under the principles of statutory construction, and in reviewing various sections of R.C. Title 29 that differentiate between misdemeanors and minor misdemeanors, we found that the statute as written did not include minor misdemeanors. Thus, we held that offenses classified as minor misdemeanors could not serve as a predicate offense for a charge of involuntary manslaughter.[2] Since the General Assembly has amended R.C. 2903.04 so that Ohio's involuntary manslaughter statute now encompasses minor misdemeanors as predicate offenses, the current version of R.C. 2903.04 differs from that which we interpreted in *Collins*. Thus, our decision in *Collins* has no bearing on our decision today.

{¶ 15} We also reject the reasoning employed by those courts, which found that R.C. 2903.04(B) violates the prohibition against cruel and unusual punishments. Although the potential maximum penalty of five years' imprisonment may be somewhat severe, it is not tantamount to cruel and unusual punishment. Unfortunately, lives were lost as a result of the traffic accident. Where human lives are lost, the gravity of the crime is serious and is not lessened by the fact that the underlying crime consists of a minor misdemeanor. Furthermore, we note that the trial court has the option of imposing a less stringent punishment than actual incarceration.[3] For instance, an offender can be sentenced to a term of probation (R.C. 2929.15 to R.C. 2929.17) or, if incarcerated, can file an application

---

2. Former R.C. 2903.04(B) provided that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor." 134 Ohio Laws, Part II, 1866, 1901.

3. Although appellee has not been sentenced, or even been found guilty, we find that the potential maximum sentence is not grossly disproportionate to the underlying crimes.

for judicial release after six months (R.C. 2929.20[A]; [B][2]). Under these circumstances, we cannot say that the potential penalty for violating R.C. 2903.04(B) is "so greatly disproportionate to the offense as to shock the sense of justice of the community." *McDougle v. Maxwell,* 1 Ohio St.2d at 70, 30 O.O.2d at 39, 203 N.E.2d at 336; cf. *Harmelin v. Michigan*, 501 U.S. at 995, 111 S.Ct. at 2701-2702, 115 L.Ed.2d at 865, where the court held that severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, and do not violate the Eighth Amendment.[4]

{¶ 16} In reaching this decision, we are cognizant of the fact that reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes. *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009, 77 L.Ed.2d at 649; *Harmelin,* 501 U.S. at 998-999, 111 S.Ct. at 2703-2704, 115 L.Ed.2d at 867 (Kennedy, J., concurring). We find that the General Assembly acted within its discretion in setting forth the penalties it did when the commission of minor misdemeanors results in the deaths of individuals.

{¶ 17} Accordingly, we hold that R.C. 2903.04(B), as applied to a minor misdemeanor traffic offense which results in a vehicular homicide, does not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution.

{¶ 18} The judgment of the court of appeals is reversed, and the cause is remanded to the trial court.

---

4. The court of appeals compared the potential sentence in this case with similar Ohio crimes and with those of other jurisdictions. However, we decline to make these comparisons. Instead, we agree with Justice Kennedy's concurrence in *Harmelin v. Michigan*, 501 U.S. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d at 871, in which he stated that a comparative analysis within the state where the crime was committed and between jurisdictions (the second and third prongs in *Solem*) is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

————————————

**PFEIFER, J., dissenting.**

{¶ 19} Dispassionate dissection of a legal conundrum is often required to achieve the correct result in matters that come before this court. In those instances, the facts of the case are secondary to the legal analysis. Here, where we are considering whether the sentence at issue would "shock the sense of justice of the community," the facts must stand at the center of our consideration. The facts in this case tell the whole story.

{¶ 20} While driving on Highway 62 on April 27, 1997, Nancy Weitbrecht apparently suffered a cardiac event, lost consciousness, crossed left of center, and collided with the Carroll vehicle. She lost her husband and a friend in the accident, and must live with the fact that she also caused the death of Vera Carroll. The state stipulated that there was no evidence of criminal recklessness or criminal negligence on her part. Nancy Weitbrecht now faces a potential five-year prison term. It would be hard to conjure up a situation more shocking to the community's sense of justice, or a more inappropriate exercise of prosecutorial discretion. I accordingly dissent.

————————————