OPINION
Defendant-appellant Damon Mills was stopped by a Cleveland police officer at 7:46 p.m. on January 31, 1998 for driving erratically and with only one headlight. After giving the officer false information on his identity, Mills declared he was not going to get a ticket or going to jail. At 8:06 p.m., Mills accelerated suddenly and, at times exceeding 100 m.p.h., led police from numerous jurisdictions on a pursuit over various interstate highways and other roadways. By 8:40 p.m., Mills was northbound on Broadview Road and approaching the intersection of Broadrock Court. Despite a red light for northbound traffic, Mills drove through the intersection without headlights at an estimated speed of 76 m.p.h.
At that same instant, Shawn Robertson, together with front seat passenger John Tokic and rear seat passenger Maureen Robertson, Shawn's younger sister, was preparing to turn left from Broadrock Court onto Broadview Road. The Robertson vehicle had a green light in its favor. When Damon Mills ran the red light, his Camaro pulverized the driver's side of the white Escort. The Camaro's speed at the moment of impact was estimated to be 66 m.p.h. Maureen Robertson and John Tokic died from the injuries they sustained in the collision. Shawn Robertson survived but sustained serious bodily injuries in the collision.
For the death of Maureen Robertson, Mills was charged with separate counts of involuntary manslaughter, R.C. 2903.04 (A), and aggravated vehicular homicide, R.C. 2903.06. For the death of John Tokic, Mills was similarly charged with separate counts of involuntary manslaughter, R.C. 2903.04 (A), and aggravated vehicular homicide, R.C. 2903.06. For the injuries to Shawn Robertson, Mills was charged with aggravated vehicular assault, R.C. 2903.08. Mills was also charged with one count of failing to comply with lawful police orders, R.C. 2921.331.
Regarding the death of Maureen Robertson, a Cuyahoga County Common Pleas jury found Mills guilty of the lesser included offense of involuntary manslaughter, R.C. 2903.04 (B), that is, death as a proximate result of a misdemeanor traffic offense, and of the charged offense of aggravated vehicular homicide, R.C. 2903.06. The jury similarly convicted Mills of the lesser included offense of involuntary manslaughter, R.C. 2903.04 (B), and of the charged offense of aggravated vehicular homicide, R.C. 2903.06, both in connection with the death of John Tokic. Finally, the jury convicted Mills of the charge of aggravated vehicular assault, R.C. 2903.08, for Shawn Robertson's injuries; and of failing to comply with lawful police orders, R.C. 2921.331.
The court sentenced Mills as follows: two five-year prison terms for the involuntary manslaughter and aggravated vehicular homicide convictions relating to Maureen Robertson, with those sentences to be served concurrently to one another; two five-year prison terms for the involuntary manslaughter and aggravated vehicular homicide convictions relating to John Tokic, with those sentences to be served concurrently to one another but consecutively to the other counts; and two eighteen-month prison terms for the convictions for aggravated vehicular assault and failing to comply with a lawful police order, with those sentences to be served consecutively to one another and consecutively to the other counts. Mills was fined in the aggregate amount of $50,000.00.
Mills appeals, stating his first assignment of error as follows:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO INSTRUCT THE JURY THAT A MENS REA OF "WILLINGLY" IS REQUIRED FOR THE MINOR MISDEMEANOR TRAFFIC OFFENSES UPON WHICH THE LESSER INCLUDED OFFENSES OF INVOLUNTARY MANSLAUGHTER WERE PREDICATED.
This assignment of error is without merit.
Although Mills was charged with involuntary manslaughter under R.C. 2903.04 (A) for causing the deaths of Maureen Robertson and John Tokic while Mills committed or attempted to commit a felony, the court instructed the jury that it could alternatively find Mills guilty of lesser included offenses for violating R.C. 2903.04 (B), which provides, in relevant part: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor." The predicate misdemeanor offenses for the lesser included offense were disobeying traffic control devices, R.C. 4511.12; speeding, R.C. 4511.21; improper lane changing, or "weaving," R.C. 4511.25; failing to control his vehicle, R.C. 4511.202; and/or operating a vehicle in willful or wanton disregard to safety, R.C. 4511.20. (Tr. 1061-1063.) Mills complains that the court committed error because it did not instruct that the defendant must act "willingly" in order to have committed the lesser included offenses. We disagree.
Involuntary manslaughter under R.C. 2903.04 (B) requires proof that the defendant's commission or attempted commission of a misdemeanor offense proximately caused a person's death. The culpable mental state necessary for an involuntary manslaughter conviction under R.C. 2903.04 (B) is the culpable mental state necessary for the underlying misdemeanor offense. See State v.Lutman (June 30, 1999), Lucas App. No. L-97-1447, unreported;Stanley v. Turner (C.A.6, 1993). 6 F.3d 399, 402.[1] None of the underlying misdemeanor offenses in this case require that the offender act "willingly" to commit the offense. It follows that Mills' convictions for involuntary manslaughter under R.C. 2903.04 (B) did not require that Mills acted "willingly."
Mills does not identify any authority to support his contention that a conviction for involuntary manslaughter while committing or attempting to commit one or more misdemeanors requires that the defendant acted "willingly." He cites Stanleyv. Turner, supra, but that case does not support his argument. In Stanley, as in this one, the defendant was convicted of involuntary manslaughter under R.C. 2903.04 (B) for a death proximately resulting from the commission of various traffic violations, for which only reckless operation required a culpable mental state other than strict liability. The defendant contended he could not be convicted of involuntary manslaughter if the underlying misdemeanor offenses lacked any element of criminal intent, but the Sixth Circuit Court of Appeals held otherwise. The Stanley court observed:
 [W]here a criminal statute prohibits and punishes conduct not innocent or innocuous in itself, the criminal intent element may be dispensed with if the criminal statute is designed for the protection of the public health and safety and if it has no common law background that included a particular criminal intent. Because citizens are presumed to know the ordinary traffic safety laws and that violating them is dangerous and wrong, Ohio's involuntary manslaughter statute, as applied in this case, is based on the obviously wrongful and blameworthy conduct of violating traffic safety laws. Accordingly, it is not the kind of statute that requires a formally stated criminal intent element in order to comport with the Due Process Clause.
* * *
 Since the violation of the duty to obey the traffic safety laws is usually considered negligence per se,
[Stanley's] commission of the underlying misdemeanors in this case means that he acted with a recognized criminal intent, i.e., negligence. This may well be a low level of criminal intent, but it suffices for the crime of involuntary manslaughter.
Id., 6 F.3d at 404 (citations omitted).
Mills has not shown that his convictions for involuntary manslaughter under R.C. 2903.04 (B) required as an element that he acted "willingly." Accordingly, we overrule his first assignment of error.
Mills' second assignment of error states:
 II. THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO DEFINE THE MINOR MISDEMEANOR TRAFFIC OFFENSES UPON WHICH THE LESSER INCLUDED OFFENSES OF INVOLUNTARY MANSLAUGHTER WERE PREDICATED.
Mills contends that the trial court committed "plain error" under Crim.R. 52 (B) when it did not define each of the traffic offenses that constituted the predicate misdemeanor offenses for his convictions for involuntary manslaughter under R.C. 2903.04 (B). Crim.R. 52 (B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error under Crim.R. 52 (B) "is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." State v. Cooperrider (1983), 4 Ohio St.3d 226,227. "[A]n erroneous jury instruction `does not constitute a plain error or defect under Crim.R. 52 (B) unless, but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Cooperrider, supra (quoting State v. Long (1978), 53 Ohio St.2d 91, 97)
In this case, the court discussed with counsel the proposed jury instruction for the lesser included offense of involuntary manslaughter under R.C. 2903.04 (B). The record reflects that Mills' trial counsel agreed it was unnecessary for the court to define the elements of each of the predicate misdemeanor offenses:
 THE COURT: You want added to the misdemeanors what the misdemeanors are? Running red lights, stop signs, reckless driving, running into cars or whatever he was doing by the evidence of the State?
 MR. O'SHEA: Whatever the State would like. I just suggested four. If they want some additional ones.
 THE COURT: I don't see a necessity to read them. Do you?
MR. DELBALSO: No.
THE COURT: Possible misdemeanors are many.
MR. O'SHEA: I don't have a problem with that.
 THE COURT: You can discuss them. If you want them enumerated.
 MR. O'SHEA: I don't have any problems with either way. Judge. * * *
(Tr. 968.) Mills' proposed supplemental jury instructions, filed May 1, 1998, likewise enumerated the applicable misdemeanor offenses only by reference to each misdemeanor's title and Revised Code section number. Mills' proposed instructions did not request a more particularized instruction for each misdemeanor.
In the instructions given at trial on the first count, the court instructed on the lesser included offense as follows:
 Involuntary manslaughter is causing the death of another as a proximate result of the offender's committing or attempting to commit any of the following misdemeanors in the lesser included offense. And there are five misdemeanors listed. Running a red light or stop sign in violation of 4511.12. Speeding, Revised Code Number 4511.21. Weaving, Revised Code Section 2411.25 [sic] Failure to control, Revised Code Section 4511.21
[sic] And/or willful or wanton disregard for safety on highways, violation of Revised Code Section 4511.20. Any one or a number of those could be considered. And there could be one, there could be five, if you come to consider a lesser included offense.
(Tr. 1063.) In its subsequent instruction on the second count, the court similarly instructed:
 Involuntary manslaughter is causing — in the course of a misdemeanor [sic] is causing the death of another, in this case as a proximate result of the offender's committing or attempting to commit any of the following misdemeanors. And we defined those for you earlier by code number. Running a stop sign or stop light, speeding, weaving, failure to control, willful or wnaton [sic] disregard for safety on the highway. They speak for themselves.
 I am not going to — I hope I am not confusing you at all so far because I am not going to read the traffic statute. Everybody here knows what running a stop light and stop sign is? Everybody knows what weaving and speeding, and willful disregard are for the safety of the highway. Am I correct in assuming that?
(Tr. 1068-1069.) The court's instructions were consistent with what Mills' trial counsel requested. There was no objection made, moreover, to the absence of a specific instruction for each of the underlying misdemeanor traffic offenses. (Tr. 1090-1092.)
We reject Mills' contention that the court committed plain error in its jury instructions. The court instructed the jury on the elements of the offense of involuntary manslaughter under R.C2903.04 (B). Mills expressly acquiesced to the court's abbreviated instructions. By his acquiescence, the parties seemingly agreed, not unreasonably, that the nature of each underlying misdemeanor offense was so well known that a detailed recitation of their constituent elements would be unnecessary in this case.
Mills' reliance on State v. Mulford (Mar. 18, 1993), Franklin App. No. 92AP-667, unreported, is unpersuasive because the trial court's burglary instruction there omitted the element of "force, stealth or deception" under R.C. 2911.12. Mills' reliance on Statev. Bergun (1976), 49 Ohio App.2d 112, is similarly misplaced because the trial court there neglected to instruct that knowledge of the character of the film was an essential element in order to convict the defendant of pandering obscenity under R.C. 2907.32 (A).Id., 49 Ohio App.2d at 121. Unlike those cases, this is not a case in which the trial court failed to instruct on unfamiliar terms of art like "burglary" or "pandering obscenity.
Moreover, Mills has not shown that the outcome of the trial would have been different had the court specifically defined each of the predicate misdemeanor offenses. As the court said in Stanley, citizens are presumed to know the ordinary traffic safety laws. Mills gives no reason to think the jury would not have found he committed one or more of the underlying misdemeanor offenses had additional instructions been given. Indeed, the overwhelming evidence in this case leaves little room for doubt that Mills committed one or more of the predicate misdemeanor offenses. Under the circumstances of this case, we cannot say that the failure to specifically define the underlying misdemeanor offenses was plain error. The second assignment of error is overruled.
Mills' third assigned error asserts:
 III. CONVICTION OF INVOLUNTARY MANSLAUGHTER PURSUANT TO R.C. 2903.04 (B) PREDICATED UPON MINOR MISDEMEANOR TRAFFIC OFFENSES LACKING ANY REQUIREMENT OF A PARTICULAR MENS REA VIOLATES THE CRUEL AND UNUSUAL PUNISHMENT CLAUSES OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9
OF THE OHIO CONSTITUTION.
Mills argues that his convictions for involuntary manslaughter under R.C. 2903.04 (B) represent cruel and unusual punishment because the underlying predicate offenses were minor misdemeanor traffic offenses. While this appeal was pending, the Supreme Court of Ohio announced its decision in State v. Weitbrecht (1999).86 Ohio St.3d 368, holding as follows:
 R.C. 2903.04 (B), as applied to a minor misdemeanor traffic offense which results in a vehicular homicide, does not violate the Eighth Amendment to the United States Constitution or Section 9. Article I of the Ohio Constitution.
Id., at syllabus. Weitbrecht is controlling and dispositive, so we overrule Mills' third assignment of error.
Mills' fourth assignment of error is:
 IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF VEHICULAR HOMICIDE.
Mills argues that the trial court erred in denying his request that the jury be instructed on vehicular homicide, R.C. 2903.07, as a lesser included offense to those counts charging Mills with aggravated vehicular homicide, R.C. 2903.06. (Tr. 880-883, 970.) The trial court refused Mills' request on the grounds that the jury could not reasonably conclude that Mills was negligent but not reckless. (Tr. 971-972.) We find no error by the court in denying Mills' request.
Aggravated vehicular homicide, R.C. 2903.06 (A), states, in relevant part: "No person, while operating or participating in the operation of a motor vehicle * * * shall recklessly cause the death of another * * *." (Emphasis added.)[2] Vehicular homicide, R.C. 2903.07 (A), states, in relevant part: "No person, while operating or participating in the operation of a motor vehicle * * * shall negligently cause the death of another * * *." (Emphasis added.)[3] Vehicular homicide, R.C. 2903.07, is a lesser included offense of aggravated vehicular homicide, R.C. 2903.06. See State v. Whitaker (1996), 111 Ohio App.3d 608.
But "even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Statev. Thomas (1988), 40 Ohio St.3d 213, syllabus at paragraph 2. So although an instruction on a lesser included offense must be given when the jury could reasonably reject the greater offense and find the defendant guilty of the lesser offense, the instruction is not always warranted just because there is "some evidence" of the lesser offense. See State v. Shane (1992), 63 Ohio St.3d 630,632-633.
Thus in State v. Wade (Apr. 13, 1995), Cuyahoga App. No. 67206, unreported, this court held that the trial court did not err in refusing a requested instruction on vehicular homicide, R.C. 2903.07, as a lesser included offense to aggravated vehicular homicide, R.C. 2903.06, because the evidence could not reasonably support an acquittal under the greater offense and a conviction under the lesser offense. The Wade court said:
 According to the eyewitness, Lisa Redd, appellant ran a red light, at night, in a heavy rain storm at 50 to 60 miles per hour, in a well-travelled area. This conduct was likely to cause an accident and demonstrated a perverse disregard for a known risk, so the conduct was reckless. R.C. 2901.22 (C). The conduct could not be construed as negligent, that is, a mere lapse of due care that may have resulted in an accident. R.C. 2901.22 (D). There was no other evidence establishing the appellant acted negligently. Thus, the jury could only find recklessness, not negligence, and appellant was not entitled to a jury instruction on the lesser included offense of vehicular homicide.
State v. Wade, supra, at *2 (citation omitted)
We likewise conclude that the trial court in the case at hand did not err in refusing to instruct the jury on the lesser included offense of vehicular homicide, R.C. 2903.07. The evidence here was that Mills had been on the run for approximately thirty-four minutes at high speeds over numerous highways and roadways in order to escape apprehension. For most of his flight. Mills drove without headlights and in obvious disregard for the safety of other motorists in his path. He caused one collision in Bratenahl even before his deadly encounter with the Robertson vehicle. Before he attempted to brake on Broadview Road, Mills' speed was estimated at 77 m.p.h., and his speed at impact was 66 m.p.h. Like State v.Wade, supra, this evidence showed that Mills acted recklessly, not negligently, and could not reasonably support both an acquittal of aggravated vehicular homicide and a conviction of vehicular homicide. We accordingly overrule Mills' fourth assignment of error.
Mills' last assignment of error states:
 V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO PRESERVE THE WRITTEN JURY INSTRUCTIONS AS PART OF THE RECORD FOR APPELLATE REVIEW.
Mills argues that the trial court committed reversible error because it failed to comply with R.C. 2945.10 (G) when it submitted a copy of its jury instructions to the jury but did not preserve those instructions as part of the record. We do not agree.
The defendant is of course entitled to examine written instructions that the jury will have in its deliberations. InState v. Schiebel (1990), 55 Ohio St.3d 71, cert. denied sub nom.Warner v. Ohio (1991), 499 U.S. 961, the court observed:
 A criminal defendant has a right to be aware of all communications with the jury, including any written jury instructions that are taken into the jury room for deliberations. Although those written instructions may only repeat earlier oral instructions, a defendant nevertheless must be allowed to inspect the written instructions to discover any omissions or discrepancies.
Id., 55 Ohio St.3d at 85. Because variations between the oral and written instructions may result in prejudicial error, R.C.2945.10 (G) directs, in relevant part: "Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with thepapers of the case. * * *" (Emphasis added.) Compliance with this statutory requirement allows the reviewing court to determine whether reversible error occurred, although the failure to keep the written charge on file with the papers of the case may be harmless error.[4]
Thus in State v. Henness (Feb. 6, 1996), Franklin App. No. 94APA02-240, unreported, at **9, fn. 3, affirmed (1997), 79 Ohio St.3d 53,cert. denied, 118 S.Ct. 422, the court held that failure to include written instructions submitted to the jury in the record was harmless error where the transcript of proceedings included the oral recitation of the jury instructions and there was no indication that the oral recitation deviated materially from the written instructions submitted to the jury. See also State v.Scott (June 14, 1994), Franklin App. No. 93APA12-1752, unreported, at *6.
In the case at hand, we cannot say that the absence of the court's written instructions from the record is reversible error. The record before us reflects that the state and Mills' counsel reviewed the court's proposed written instructions with the court in advance of the court's oral instructions. (Tr. 873-887; 955-973.) Mills' trial counsel did not identify any error in the written instructions, much less any variation between the court's oral instructions and the written instructions that had been reviewed previously. Mills' appellate counsel likewise gives us no reason to believe that the written instructions submitted to the jury varied from those delivered orally by the court and recorded in the transcript of proceedings. On this record, we conclude that the trial court's failure to include the written instructions in the record was harmless error.
The authorities on which Mills relies are distinguishable. InColumbus v. Marcum (1989), 65 Ohio App.3d 530, the defendant was not given the opportunity to review additional written instructions the court gave to the jury and the absence of those written instructions in the record prevented the defendant from showing whether they varied from the court's earlier instructions. Mills, by contrast, did review the court's written instructions before they were given to the jury.
In State v. Smith (1993), 87 Ohio App.3d 480, the court held that the trial court erred by pre-charging the jury and failing to instruct the jury completely at the end of closing arguments, and that the absence of written instructions prevented the appellate court from reviewing the correctness of the court's instructions. In the case at bar, however, the trial court did instruct the jury completely after closing arguments and Mills never suggested there was any discrepancy between the oral and written instructions. And in State v. Mitchell (Mar. 13, 1995), Licking App. No. 92-CA-71. unreported, the court found the trial court committed plain error in failing to give an appropriate jury instruction. We find no comparable error in the case before us.
We accordingly overrule Mills' fifth assignment of error.
While our disposition of Mills' five assignments of error requires us to affirm his conviction, we are obliged to recognize and correct a plain error under Crim.R. 52 (B) in Mills' sentence. In State v. Chippendale (1990), 52 Ohio St.3d 118, the court declared aggravated vehicular homicide, R.C. 2903.06, and involuntary manslaughter, R.C. 2903.04 (B), to be allied offenses of similar import because the commission of the former will necessarily result in the commission of the latter. Id., at 121-122. See also State v. Davis (1983), 13 Ohio App.3d 265. Under R.C. 2941.25 (A), the defendant may be charged and tried for both offenses but may be sentenced for only one. State v. Chippendale,supra.
In this case, Mills was convicted of involuntary manslaughter, R.C. 2903.04 (B), and of aggravated vehicular homicide, R.C. 2903.06, in connection with the death of Maureen Robertson. The court sentenced Mills to two concurrent five-year prison terms for each conviction and fined him $10,000 for each conviction. Under R.C. 2941.25 (A) and State v. Chippendale,supra, these convictions merged and Mills should have been sentenced to one five-year prison term and fined $10,000.
Mills was similarly convicted of involuntary manslaughter, R.C. 2903.04 (B), and of aggravated vehicular homicide, R.C.2903.06, in connection with the death of John Tokic. The court again erroneously sentenced Mills to two concurrent five-year prison terms for each conviction and fined him $10,000 for each conviction. Under R.C. 2941.25 (A) and State v. Chippendale,supra, these convictions merged and Mills should have been sentenced to one five-year prison term and fined $10,000.
Pursuant to R.C. 2953.08 (G) (1) (d), we accordingly modify Mills' sentence as follows: one five-year prison term for the convictions relating to the death of Maureen Robertson; one five-year prison term for the convictions relating to the death of John Tokic; and two eighteen-month prison terms for the convictions for aggravated vehicular assault regarding Shawn Robertson's injuries and failing to comply with a lawful police order — all sentences to be served consecutively to one another. Mills' fine is in the aggregate amount of $30,000.00.
As modified, the judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed as modified, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and TERRENCE O'DONNELL, J., CONCUR.
 ________________________ DIANE KARPINSKI JUDGE
[1] Similarly, the culpable mental state necessary for an involuntary manslaughter conviction under R.C. 2903.04 (A) is the culpable mental state necessary for the underlying felony offense. See State v. Brown (June 27, 1996), Cuyahoga App. No. 69149, unreported; State v. Malone (Jan. 24, 1994), Cuyahoga App. No. 63604, unreported; State v. Campbell (1991), 74 Ohio App.3d 352;State v. Losey (1985). 23 Ohio App.3d 93.
[2] R.C. 2901.22 (C) provides:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
[3] R.C. 2901.22 (D) provides:
 A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.
[4] Crim.R. 52 (A) instructs us to disregard any error, defect, irregularity or variance which does not affect substantial rights.