[Cite as *State v. Ethley*, 2015-Ohio-3230.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 102138

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# STEPHEN A. ETHLEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-583381-A

**BEFORE:** Boyle, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 13, 2015

**ATTORNEY FOR APPELLANT**

Kathleen Amerkhanian
Kryszak & Associates Co., L.P.A.
5330 Meadow Lane Court, Suite A
Sheffield Village, Ohio 44035

**ATTORNEYS FOR APPELLEE**

Timothy J.   McGinty
Cuyahoga County Prosecutor
BY: John Patrick Colan
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Stephen A. Ethley, appeals his convictions and sentence. He raises five assignments of error for our review:

1. The sentence imposed by the trial court on Counts I and IV, as amended, and the trial court's decision to run the sentences consecutively, are clearly and convincingly contrary to law, constitute an abuse of discretion, and violate Defendant's rights to due process under the U.S. Constitution, Amendment V and VI, and the Ohio Constitution.

2. The sentence imposed by the trial court on Counts I and IV, as amended, and the trial court's decision to run the sentences consecutively, violate the prohibition against cruel and unusual punishment in the Eighth Amendment of the U.S. Constitution and Article 9, Section I of the Ohio Constitution.

3. Mr. Ethley's guilty plea was not knowing, intelligent and voluntary and the acceptance of the plea without advising Mr. Ethley of the full extent of the potential consequential consequences, including consecutive sentencing, was contrary to law.

4. The pre-sentencing investigation report contained a significant inaccuracy, which gave the trial court the impression that Mr. Ethley was the initial aggressor and caused the trial court to adopt the prosecution's theory of the case, which violated Defendant's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution and the Ohio Constitution.

5. Mr. Ethley received ineffective assistance of counsel during the trial court proceedings in violation of the Sixth Amendment and Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶2} After review, we find no merit to his arguments and affirm.

## Procedural History and Background

**{¶3}** In March 2014, Ethley was indicted on four counts: murder in violation of R.C. 2903.02(B); felonious assault in violation of R.C. 2903.11(A)(1); drug possession in violation of R.C. 2925.11(A); and illegal conveyance into a detention facility in violation of R.C. 2921.36(A)(2).

**{¶4}** In August 2014, Ethley pleaded guilty to an amended indictment of involuntary manslaughter in violation of R.C. 2903.04(A), and attempted conveyance into a detention facility in violation of R.C. 2923.02 and 2921.36(A)(2). The remaining counts were nolled.

**{¶5}** At the plea hearing, the state outlined the plea agreement, which defense counsel and Ethley indicated was also their understanding of it. The trial court then addressed Ethley. In response to the trial court's questions, Ethley stated that he was 33 years old, had attended high school through the 12th grade, was an American citizen, was not under the influence of alcohol or drugs at the plea hearing, and that no one had made any threats or promises to him to get him to change his plea. Ethley further stated that he was not on probation or parole for another case and that he was satisfied with his counsel's representation. The trial court also reviewed Ethley's constitutional rights with him and made sure that Ethley understood those rights and that he was waiving them by entering into the plea.

**{¶6}** After the trial court reviewed Ethley's constitutional rights, it discussed the specifics of the plea deal and the nature and penalties of the charges. The trial court

informed Ethley that involuntary manslaughter was a first-degree felony with a possible prison term of three to 11 years and a fine up to $20,000. The trial court also told Ethley that attempted illegal conveyance into a detention facility was a fourth-degree felony with a possible prison term of six to 18 months and a fine up to $5,000.

{¶7} The trial court then notified Ethley that he would be subject to five years of mandatory postrelease control: five years of mandatory for the involuntary manslaughter and three years of discretionary for the attempted conveyance. The trial court also notified Ethley of the ramifications that he would face if he violated the terms of his postrelease control or if he was convicted of another felony while on postrelease control.

{¶8} The trial court accepted Ethley's guilty pleas, finding that he voluntarily, knowingly, and intelligently entered into them. Defense counsel then requested that a presentence investigation report ("PSI") and a drug assessment be completed prior to sentencing.

{¶9} At the sentencing hearing, the trial court indicated that it had reviewed the PSI and drug assessment, as well as Ethley's sentencing memorandum and a letter from Ethley's employer. The trial court asked defense counsel and the state if both sides had reviewed the PSI and if it was accurate; both responded that there were no issues with the PSI.

{¶10} The state spoke first, opining that based on Ethley's lengthy criminal history beginning in 1998, he had plenty of time to get his life together, but never did. The state stated:

I want to point out the fact that Mr. Ethley has had plenty of time to get his life straight as he started off in the system in 1998 when he was 18 years old with a robbery case. He moved on the next year to possession. In 2000 he again was in the system with illegal convenience and aggravated menacing. In 2001, trafficking. He was put on probation. He violated proving he cannot abide by conditions of probation. In 2002, domestic violence. In 2007, domestic violence where he violated conditions of his probation. 2010, trafficking where he violated conditions of his probation 3 times, 3 times. In 2010 a DUI where he violated the conditions of his probation 2 times. 2011, disorderly conduct. 2012, disorderly conduct. 2013, endangering children, 2013, a DUI. He was on probation when he committed this offense.

{¶11} According to the prosecutors, it was always their theory that Ethley possibly supplied the victim with the PCP that was in his system because Ethley and the victim were friends. The victim had high levels of PCP in his system when he died, and Ethley had attempted to take PCP into the jail when he was arrested. The state also indicated that through the drug assessment, Ethley said that he had a PCP problem since he was 14 years old. The state also informed the court that on the night the victim died, Ethley and the victim went to a friend's house to watch a Cleveland Cavaliers game. They got up to go outside and at some point a fight occurred. The victim got back into the house. The state told the court that according to several witnesses at the scene, Ethley tried to kick the door down, trying to get at the victim. Ethley got back into the house, and was holding the victim down when the victim died. The state opined that Ethley deserved prison and deserved the sentences to be served consecutively.

{¶12} The state informed the court that "[a]ccording to the medical examiners, the cause of death was sudden death with physical altercation, ischemic cardiovascular

disease, obesity and PCP intoxication." The state said that is why it amended the charge to involuntary manslaughter.

{¶13} Defense counsel told the court that Ethley had no idea that his friend had heart disease or was on PCP at the time of the fight. Defense counsel opined that this case involved a low level involuntary manslaughter and that Ethley should receive community control sanctions.

{¶14} Ethley's girlfriend, his mother, and a person who said that she would employ Ethley if the court did not send him to prison, spoke on Ethley's behalf. Ethley also spoke to the court. He apologized to the victim's family, his own family, and the court. He said that he and the victim were friends. He said that he knew that the victim would never have attacked him if the victim had not been on PCP. Ethley stated that he was high that day, but only on marijuana and beer. Ethley told the court that the only reason he wanted to get back in the house was to get his cell phone. Ethley also said that he was having a very hard time with the victim's death.

{¶15} The trial court indicated that in determining what sentence to impose, it relied on the presentence investigation report, the information provided in the written material supplementing that report, and the people who spoke in court representing both families, as well as the statements of counsel on behalf of their respective positions.

{¶16} Based upon everything that it heard, the court found that prison was necessary. The trial court sentenced Ethley to four years in prison for involuntary manslaughter. In determining how much time to give Ethley for a first-degree felony,

the trial court stated that it considered the three factors that combined to cause the victim's death, including the fight between Ethley and the victim, the PCP, and the victim's physical condition. The trial court stated that it was unclear if Ethley had anything to do with the illegal drug that was in the victim's system, but that Ethley certainly had a part in the fight between the two. The trial court noted that it was troubled by the fact that Ethley had PCP on him when he was arrested, stating it suggested that Ethley either supplied the drug to the victim or was using it himself. The trial court noted that either way, the drug PCP had something to do with the fight. The trial court further considered the fact that Ethley had the opportunity to leave when he was outside, but chose not to. The trial court stated that even if it believed that Ethley was trying to get his cell phone, his actions did not appear as if he was trying to withdraw from the situation. The trial court concluded that even if the victim started the fight, Ethley could have ended it, but did not do so.

{¶17} With respect to the attempted illegal conveyance, the trial court stated that it would impose the sentence consecutive to the involuntary manslaughter. In making the consecutive sentence findings, the trial court stated:

> It's my determination that it is necessary to punish the offender and to protect the public from future crime making consecutive sentence these matters not disproportionate to the conduct or nature by the defendant. And this is based in part because of your criminal history, particularly with regard to drug possession as it's demonstrated by your record in that regard and also by your acknowledgment that the demon, as you referred to it as, [PCP], has been an issue of long standing. Based on the record it has been reflected in your criminal history. So I think there is a basis to make it consecutive sentences. I do think that the illegal substance was a significant contributor either on your side or his side or both in this

circumstance, and for all of those reasons I think it is appropriate to make it consecutive sentences.

{¶18} The trial court then sentenced Ethley on attempted illegal conveyance into a detention facility, ordering that he serve one year of community control sanctions, including 180 days of jail (to be served consecutive to his prison sentence), and then six months in the Community Based Correctional Facility for drug treatment. Thus, Ethley received a total of five years of incarceration. The trial court also notified Ethley that he would be subject to five years of mandatory postrelease control. It is from this judgment that Ethley now appeals.

<u>Sentencing Issues</u>

{¶19} In his first assignment of error, Ethley contends that the trial court failed to follow the mandates of R.C. 2929.11, 2929.12, and 2929.14(C)(4) when sentencing him, and thus, his sentence is contrary to law. First, he argues that the trial court improperly sentenced him for a crime that he did not commit (i.e., giving PCP to the victim). Next, he maintains that the trial court erred in finding that he instigated the fight with the victim. Finally, he contends that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4).

{¶20} Although Ethley asserts that we must review under an abuse of discretion standard, that is not the case. R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard for review is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C.

2929.14(C)(4)," or that (2) "the sentence is otherwise contrary to law," then we "may increase, reduce, or otherwise modify a sentence * * * or [a reviewing court] may vacate the sentence and remand the matter to the sentencing court for re-sentencing."

{¶21} R.C. 2929.11(A) provides that

> A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶22} Under R.C. 2929.12(A), "a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." In doing so, trial courts must consider a nonexhaustive list of factors, including the seriousness of the defendant's conduct, the likelihood of recidivism, and "any other factors that are relevant to achieving those purposes and principles of sentencing."

{¶23} A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10, citing *State v.*

*Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18.

**{¶24}** We disagree with Ethley that the trial court considered improper factors when sentencing him. The trial court did not sentence Ethley for trafficking. In fact, the trial court specifically stated that it was "unclear if Ethley had anything to do with the illegal drug that was in the victim's system."

**{¶25}** Further, Ethley pleaded guilty to involuntary manslaughter, which provides: "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." "A guilty plea admits the facts set forth in the indictment." *State v. Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 8 (2d Dist.). Ethley has therefore admitted that he caused the victim's death by committing a felony, which would be felonious assault in this case. Thus, even if the victim started the fight, Ethley admitted to committing felonious assault that resulted in the victim's death. Further, the trial court specifically found that even if the victim started the fight, Ethley could have ended it, but chose not to. And even if the court accepted Ethley's version of the events, that he only went back into the house to retrieve his cell phone and did not force his way back into the house, Ethley still fought with the victim again once he was inside the house.

**{¶26}** Regarding Ethley's third issue involving consecutive sentences, Ethley only raises two issues. First, he contends that the trial court erred when it found that his history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public because "the bulk" of his prior offenses did not involve harm to

persons or property. Ethley's criminal history was lengthy, involving many drug convictions (possession and trafficking), robbery, criminal damaging, driving while under the influence, endangering children, as well as multiple domestic violence charges. We disagree with Ethley that his criminal record does not support the trial court's finding under R.C. 2929.14(C)(4) ("that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender"). The PSI also indicates that Ethley was found to have violated his community control sanctions several times in multiple cases.

{¶27} Next, he maintains that the trial court improperly imposed consecutive sentences because it adopted the state's theory that he gave the victim PCP. But we already rejected this argument; the trial court did no such thing.

{¶28} Ethley's first assignment of error is overruled.

### Cruel and Unusual Punishment

{¶29} In his second assignment of error, Ethley argues that "[f]or all the same reasons that the sentence is contrary to law, as detailed in [his first assignment of error] the term of incarceration in this case is grossly disproportionate to the conduct that it is meant to punish" under the Eighth Amendment of the United States Constitution and Article 9, Section I, of the Ohio Constitution. He asserts that five years of incarceration and five years of postrelease control for what amounts to "a fight between two adults" is "shocking to any reasonable person."

{¶30} The Eighth Amendment states, "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted." The Ohio Supreme Court has recognized that the Eighth Amendment is applicable only to the very rare case where the penalty imposed would be "'considered shocking to any reasonable person.'" *State v. Weitbrecht*, 86 Ohio St.3d 368, 371, 715 N.E.2d 167 (1999), quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). Further, "[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *McDougle* at 69.

{¶31} In this case, the trial court imposed a sentence that was less than the maximum — four years in prison and one year of additional incarceration in the county jail and in a drug treatment program. For involuntary manslaughter, the trial court could have sentenced Ethley to 11 years in prison; the trial court chose four years. For illegal conveyance into a detention facility, the trial court could have sentenced Ethley to six to 18 months in prison; the trial court chose community control, which included one year of additional incarceration. Ethley's sentence was far from "shocking." Indeed, Ethley received a fair sentence, not a "cruel and unusual" one.

{¶32} Ethley's second assignment of error is overruled.

## Crim.R. 11

{¶33} In his third assignment of error, Ethley argues that his plea was not voluntarily, knowingly, and intelligently entered into because the trial court failed to inform him that it could impose consecutive sentences.

{¶34} To ensure that a plea to a felony charge is knowingly, intelligently, and

voluntarily entered into, a trial court must follow the dictates of Crim.R. 11(C)(2). This provision provides that the court must address defendants personally and (1) determine that they understand the nature of the charges against them and of the maximum penalty involved, (2) inform them of and determine that they understand the effect of a plea of guilty or no contest and that the court may proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a) – (c).

{¶35} Upon review, we conclude that the trial court's failure to inform Ethley that he could receive consecutive sentences does not render his guilty plea unknowing, involuntary, or unintelligent. Crim.R. 11(C) does not require a defendant to be told that his sentences may be imposed consecutively. *State v. Bailey*, 2d Dist. Montgomery No. 19736, 2004-Ohio-273, ¶ 16, citing *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1989). The Ohio Supreme Court stated in *Johnson* that "the decision of whether the criminal defendant is to serve the sentences for all his crimes consecutively or concurrently is a matter of sentencing discretion, the exercise of which is committed to the trial court." *Id.* at 133-134. Thus, the *Johnson* court concluded that because the decision whether to impose consecutive sentences was a matter within the trial court's discretion, it need not be addressed at a plea hearing. *Id.* at 134.

{¶36} Ethley further argues that his plea was not voluntary, knowing, or intelligent because his defense counsel "assured" him that he would not receive more than a three-year sentence. There is nothing in the record, however, to substantiate this

claim.    Indeed, Ethley told the trial court that he was not promised anything in exchange for his plea.

{¶37} Ethley's third assignment of error is overruled.

## Presentence Investigation Report

{¶38} In his fourth assignment of error, Ethley argues that his PSI "contained a significant inaccuracy, which gave the trial court the impression that Mr. Ethley was the initial aggressor and caused the trial court to adopt the prosecutor's theory of the case," violating his due process rights.

{¶39} Ethley's arguments are without merit.    Ethley claims that the PSI incorrectly stated that he did not provide a statement to police.    Ethley asserts that he told police that the victim started the fight and "continued to be the aggressor throughout the struggle."    He contends that without this information at sentencing, the trial court had no choice but to believe that he started the fight because the police report contained witnesses' statements saying so.

{¶40} Even if the PSI was incorrect, however, we find no prejudice to Ethley because Ethley informed the trial court of his version of the events at sentencing (a fact Ethley admits here, stating "the trial court was given notice" of the inaccuracies in the PSI when Ethley told him his version of the events).

{¶41}    Accordingly, Ethley's fourth assignment of error is overruled.

## Ineffective Assistance of Counsel

{¶42} In his fifth and final assignment of error, Ethley argues that his trial counsel

provided ineffective assistance of counsel.

**{¶43}** To establish a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986).

**{¶44}** Ethley argues that his counsel was ineffective for failing to object to the inaccurate PSI, for failing to adequately highlight mitigating factors surrounding the offense (specifically the fact that he did not start the fight), for failing to inform the trial court that it did not advise Ethley that he could receive consecutive sentences, and for failing to object to him receiving consecutive sentences.

**{¶45}** Ethley raised these supposed "failures" in his previous assignments of error (although not in the context of an ineffective assistance of counsel argument). Thus, even if we were to agree with Ethley that his counsel was defective in one of these ways, Ethley has failed to establish that he was prejudiced by his counsel's purported deficient performance as shown in our analysis of each of his arguments that he raised on appeal.

**{¶46}** Ethley's fifth assignment of error is overruled.

**{¶47}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR