DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Louis Hairston, defendant below and appellant herein, guilty of aggravated burglary in violation of R.C. 2911.11(A)(1), aggravated robbery in violation of R.C.2911.01(A)(1), two counts of kidnaping in violation of R.C. 2905.01(B), theft in violation *Page 2 
of R.C. 2913.02(A)(3), and disrupting public services in violation of R.C. 2909.04(A)(1).
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS CONTEMPLATED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT REMOVING COURT APPOINTED COUNSEL AND SUBSTITUTING NEW COUNSEL WHEN THE COURT BECAME AWARE OF THE FAILURE OF THE ATTORNEY-CLIENT RELATIONSHIP TO THE EXTENT THAT THERE WAS A COMPLETE BREAKDOWN OF COMMUNICATION BETWEEN DEFENDANT/APPELLANT AND TRIAL COUNSEL."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT BY ORDERING THE DEFENDANT/APPELLANT TO BE RESTRAINED DURING TRIAL."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT BY NOT DECLARING A MISTRIAL WHEN JURORS VIEWED THE DEFENDANT IN SHACKLES AND/OR HANDCUFFS."
 FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WITH RESPECT TO THE ADMISSION OF ALLEGED OTHER BAD ACTS BY APPELLANT AND APPELLANT'S CO-DEFENDANTS, AND FURTHER THAT A LIMITING INSTRUCTION COULD NOT EFFECTIVELY CURE THE PREJUDICIAL EFFECT OF SAID ADMISSION." *Page 3 
 SIXTH ASSIGNMENT OF ERROR:
 "CONSIDERED TOGETHER, THE CUMULATIVE ERRORS SET FORTH IN DEFENDANT/APPELLANT'S SUBSTANTIVE GROUNDS FOR RELIEF MERIT REVERSAL AND/OR REMAND FOR A PROPER POSTCONVICTION PROCESS."
 {¶ 3} Ralph and Marcia Melcher own and operate Melcher Funeral Home at 1417 Offnere Street in Portsmouth. The Melchers live on the second floor, directly above the funeral home. In May 2004, a burglary occurred at the residence while the Melchers slept. Although the perpetrator(s) escaped, subsequent tests revealed Marquis Hairston's DNA on cigarette butts left at the premises.
 {¶ 4} On September 29, 2005, during the early morning hours, the Melchers awoke to find three men standing around their bed. The men ordered the couple to kneel as they searched for valuables. After ransacking the residence, the men ordered the Melchers to the living room, ordered them to remove their clothing and then tied them to chairs. One man groped Mrs. Melcher and indicated that a sexual assault was about to occur. This action prompted the couple to fight the intruders. Startled, two of the men fired their pistols at the Melchers and quickly fled the residence.
 {¶ 5} The couple managed to untie themselves and Marcia found the only working telephone in the residence to call 911.[2] After emergency transport to the hospital, the Southern Ohio Medical *Page 4 
Center (SOMC) staff determined that the couples' injuries were severe and that they should be stabilized and taken to Grant Medical Center in Columbus. Also, before leaving SOMC, catholic priests performed last rites on the couple.[3]
 {¶ 6} Portsmouth police investigated the crime and followed several leads. Meanwhile, in the German Village area of Columbus a string of robberies had striking similarities to the Melcher incident. Robbery victims in those cases were forced to remove their clothing and were tied to chairs.
 {¶ 7} Marquis, Louis and Jovaughney Hairston were eventually arrested for the Columbus burglaries after stolen property was found in local pawn shops and traced to them.[4] Marquis confessed to three cases and Jovaughney confessed to one. Appellant Louis Hairston did not confess to any of the Columbus burglaries, but did admit to selling stolen property from those homes to various pawn shops.
 {¶ 8} In October 2005, a Portsmouth Police clerk was speaking on the telephone with an insurance adjuster when the clerk mentioned the Melcher robbery. The insurance adjuster mentioned the similarities to the German Village robberies. Around the *Page 5 
same time, Portsmouth police received a "CODAS hit" that matched DNA taken from Marquis Hairston to the Melcher robbery DNA.[5]
 {¶ 9} On January 31, 2006, the Scioto County Grand Jury returned an indictment that charged appellant with aggravated burglary, aggravated robbery, two counts of attempt to commit aggravated murder, two counts of kidnaping, gross sexual imposition, theft, and disrupting public services. Appellant pled not guilty.
 {¶ 10} Later, the prosecution requested that all three defendants be tried at a single trial and the trial court granted the request. The matter then came on for jury trial over six days in May 2006.
 {¶ 11} At trial, the perpetrators' identification was the primary issue. Ralph and Marcia Melcher testified that the Hairstons broke into their home and terrorized them. They also admitted, however, that the perpetrators partially obscured their faces. Evidence also indicated that the Melchers had trouble identifying the Hairstons from a photographic lineup and that they first reported their attackers as either hispanic or African-American (the Hairstons are African-American). Marcia Melcher also conceded that her recollection was "foggy," except for her identification of the perpetrators.
 {¶ 12} At the conclusion of the trial, the jury returned guilty verdicts. Specifically, the jury found Appellant Louis *Page 6 
Hairston guilty of aggravated burglary, aggravated robbery, both kidnaping counts, theft and disrupting public services. The jury also found that appellant used a firearm in committing these offenses. The jury, however, acquitted appellant on the attempted aggravated murder charges and the gross sexual imposition charge.
 {¶ 13} The trial court sentenced appellant to serve seven years for aggravated burglary, eight years for aggravated robbery, six years on each kidnaping count, one year for theft, one year for disrupting public services and three years on a firearm specification. The court ordered most of the sentences to be served consecutively for an aggregate total of thirty-one (31) years.[6] This appeal followed.
 I {¶ 14} Appellant's first assignment of error asserts that he received ineffective assistance of counsel. Our analysis begins with the premise that criminal defendants have a right to counsel, including a right to the effective assistance from counsel. McCann v. Richardson (1970),397 U.S. 759, 770, 25 L.Ed.2d 763, 90 S.Ct. 1441; State v. Lytle (Mar. 10, 1997), Ross App. No. 96CA2182; State v. Doles (Sep. 18, 1991), Ross App. No. 1660. *Page 7 
 {¶ 15} To establish ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. See Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 104 S.Ct. 2052; also see State v. Issa (2001),93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Goff (1998), 82 Ohio St.3d 123,139, 694 N.E.2d 916. However, both prongs of the Strickland test need not be analyzed if the claim can be resolved under one. See State v.Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52.
 {¶ 16} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. State v. White (1998),82 Ohio St.3d 16, 23, 693 N.E.2d 772; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. Furthermore, courts should not simply assume the existence of prejudice, but require that it be affirmatively shown. See State v. Clark, Pike App. No. 02CA684, 2003-Ohio-1707, at ¶ 22; State v. Tucker (Apr. 2, 2002), Ross App. No. 01CA2592; State v. Kuntz (Feb. 26, 1992), Ross App. No. 1691, unreported.
 {¶ 17} In the case sub judice, most of the alleged instances of ineffective assistance that appellant cites do not establish the required prejudicial effect. For instance, appellant asserts that trial counsel failed to file pre-trial motions. *Page 8 
 {¶ 18} The absence of pre-trial motions, however, is not indicative of ineffective assistance unless prejudice is affirmatively shown. See e.g.State v. Mapes, Cuyahoga App. No. 86225, 2006-Ohio-294, at ¶ 33;State v. Wilson, Stark App. No. 2005CA00102, 2005-Ohio-5959, at ¶ 16;State v. Buoscio (Jan. 22, 1997), Mahoning App. No. 93CA88. In this case, appellant does not identify the specific "pretrial issues" that he believes trial counsel should have addressed. Thus, appellant has not established prejudice.
 {¶ 19} Appellant also claims that counsel should have objected to the consolidation of the cases for trial. However, beyond a statement that consolidation is "viewed as detrimental by criminal defense attorneys" and is "inherently prejudicial," appellant does not establish how the consolidation prejudiced him or how the outcome of trial would have been different if counsel had objected. Likewise, appellant claims that trial counsel was ineffective for not requesting that his case be severed from the other two and in support he cites an in-chambers discussion that counsel considered making arguments to exonerate him and to implicate the other defendants. We, however, reject this claim for several reasons: (1) it does not appear that counsel actually made those arguments at trial; (2) nothing about the consolidation prohibited appellant from making such arguments; and (3) the trial court advised counsel that if he did make such arguments, he must produce evidence to support those arguments. In light of these circumstances, a finding of prejudice on those *Page 9 
facts would be speculative at best. Appellant also claims that trial counsel failed to explore issues of venue, the press, cameras in court and the use of photographs in court. Here again, appellant does not elaborate on what the "issues" are in regard to these matters and we will not attempt to formulate that argument for him. Appellant also faults trial counsel for not opposing the introduction of evidence concerning prior bad acts.
This issue came up numerous times at trial, however, and counsel for all three defendants made strong arguments to exclude that evidence (see, also, discussion infra concerning appellant's fifth assignment of error). Appellant next contends that counsel was ineffective because he failed during voir dire to challenge jurors Sowkulech, Crabtree, Ball, Burton and Dunham. However, even if counsel's failure to challenge those jurors constituted error, none served on the jury panel. Thus, appellant can show no prejudice. We also find no merit in appellant's argument that comments from those prospective jurors "tainted" the remainder of the jury pool. Appellant cites no evidence of that in the record and we have found none in our review of the transcript. Appellant also claims that trial counsel erred by not challenging juror Yates (who did serve the panel) when he answered in the affirmative as to whether he would find testimony of someone in law enforcement more credible than the testimony of someone not in law enforcement. We note, however, that the question of credibility was asked in the context of his "friends or family in law enforcement." Yates said nothing about finding strangers in *Page 10 
law enforcement more credible than others. Second, law enforcement credibility had virtually no impact in this case because police played little role in appellant's conviction. Here, the evidence came primarily from the victims' testimony, not police.
 {¶ 20} In summary, we find nothing in the record to establish that appellant received constitutionally ineffective representation by trial counsel. Accordingly, we hereby overrule appellant's first assignment of error.
 II {¶ 21} Appellant's second assignment of error involves an incident that occurred near the end of trial. On the fifth day, after the presentation of German Village robbery evidence, appellant became enraged and refused to return to the courtroom. Appellant also notified the bailiff that if he was forced to return, he would assault his attorney. Eventually, appellant returned to the courtroom and the trial proceeded without incident. Although appellant did not request new counsel, he now argues on appeal that the trial court should have nevertheless appointed him a new attorney. We disagree.
 {¶ 22} Our review of the record reveals no indication of a "complete breakdown in communication" between counsel and appellant as is asserted in the brief. One of the other attorneys spoke with appellant and found that he was upset about the introduction of evidence from the Columbus burglaries. He thought "everyone" in the courtroom was laughing at him and he *Page 11 
disagreed with the manner in which his counsel handled the situation. Counsel also revealed that he had "been down this road before" with his client and appellant simply needed to calm down. Moreover, appellant returned to the courtroom a short time later and the trial proceeded without incident.
 {¶ 23} Substitution of counsel lies in the sound discretion of the trial court and its decision on such matters will not be reversed absent an abuse of that discretion. State v. Cobb, Scioto App. No. 06CA3076,2007-Ohio-1885, at ¶ 11; State v. Kirk, Union App. No. 14-06-28,2007-Ohio-1228, at ¶ 56. We note that an abuse of discretion is much more than an error of law or judgment; rather, an abuse of discretion implies that a court's attitude is unreasonable, arbitrary or unconscionable. See State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 331, 335; State v. Moreland (1990), 50 Ohio St.3d 58, 61,552 N.E.2d 894, 898. Under the abuse of discretion standard, appellate courts must not substitute their judgment for that of the trial court.See State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181; Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301. To establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance of judgment, and not the exercise of reason but instead passion or bias. Vaught v. Cleveland ClinicFound., *Page 12 98 Ohio St.3d 485, 787 N.E.2d 631, 2003-Ohio-2181, ¶ 13; Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 24} Generally, hostility, disagreement over trial tactics or personal conflict are not sufficient reasons to justify changing appointed counsel, unless it interferes with preparation or presentation of a competent defense. See State v. Vaughn, Cuyahoga App. No. 87245,2006-Ohio-6577, at ¶ 19. In the case sub judice, however, the case was almost fully presented when this incident arose. Further, nothing in the record suggests that the defense suffered prejudice by the failure to appoint new counsel.
 {¶ 25} In light of the facts and circumstances of this case, we find that the trial court did not abuse its discretion by failing to appoint appellant new trial counsel and we hereby overrule appellant's second assignment of error.
 III {¶ 26} We jointly consider appellant's third and fourth assignments of error because they raise similar issues. At several points during the trial, concern arose about security risks that the defendants posed in the courtroom. The parties discussed this issue before the trial and the court ordered that the defendants wear shackles, but no handcuffs. In addition, the court ordered appellant to wear a stun belt. He asserts on appeal that these restraints prejudiced him and denied him a fair trial. We are not persuaded.
 {¶ 27} At the outset, we note that although the trial court ordered the defendants to wear shackles, the trial court also *Page 13 
ordered that "modesty panels" be attached to counsel table so that the jury could not see the shackles. Additionally, the court ordered that the defendants would be brought into the courtroom before the jury and taken from the room after the jury exited, that no instructions would be given for people to rise when either the judge or jury walked into the room, and that appellant's stun belt would not be visible to the jury.
 {¶ 28} We have previously held that restraints should be used as a last resort because they tend to erode the presumption of innocence that attaches during a criminal trial. State v. Evans, Scioto App. No. 05CA3002, 2006-Ohio-2564, at ¶¶ 37-38; State v. Lupo (Sep. 15, 1999), Washington App. No. 98CA44; State v. Curry (Sep. 30, 1997), Scioto App. No. 95CA2339. In this case, however, the trial court went to extraordinary lengths to ensure that the jury did not observe the restraints. Thus, the erosion of the presumption of innocence is not at issue here.
 {¶ 29} We also acknowledged that the trial court's bailiff, Shawn Davis, testified that Franklin County officials informed him that the defendants caused trouble in the Franklin County court during their trial. Further, jurors reported that the defendants stared at them menacingly during trial and, as mentioned previously, appellant threatened to assault his counsel.
 {¶ 30} Generally, the decision to require defendants to wear restraints rests in a trial court's sound discretion and will not be overturned absent an abuse of discretion. State v. Roper *Page 14 
(Mar. 22, 1996), Lawrence App. No. 94CA34; State v. Simmons (Dec. 20, 1995), Scioto App. No. 94CA2281. Here, in light of the problems that occurred in Franklin County, and the trial court's efforts to ensure that jurors did not observe the restraints, we find nothing arbitrary, unreasonable or unconscionable in the court's decision.
 {¶ 31} Appellant also argues that the trial court erred by not declaring a mistrial after two members of the jury, while outside the courtroom, observed the defendant in restraints. As the prosecution correctly points out, however, a brief, inadvertent sighting of a defendant in handcuffs is not usually prejudicial. See State v.McKnight, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005-Ohio-6046, at ¶ 219;State v. Kidder (1987), 32 Ohio St.3d 279, 285-286, 513 N.E.2d 311. Further, once this incident came to the court's attention, the judge questioned every member of the jury panel and actually excused two members. The court also instructed the remaining jurors that they must not consider any evidence from "outside" the courtroom. Curative instructions are generally presumed to remove any prejudice.McKnight, supra at ¶ 220; State v. Garner (1995), 74 Ohio St.3d 49, 59,656 N.E.2d 623.
 {¶ 32} Finally, some evidence exists to indicate that the defendants may have actually engineered the juror sighting. Bailiff Terry Minch informed the trial court that the defendants called out to the jurors to see them in their "shackles and chains." They then chanted "tainted jury, mistrial, tainted *Page 15 
jury" so that everyone in the "mezzanine area" could hear them. Suffice it to say, defendants must not manipulate or attempt to manipulate the judicial system. If the defendants purposely brought their restraints to the attention of the jury to attempt to engineer a mistrial, they should not be rewarded for their actions.
 {¶ 33} In the end, the decision to grant a mistrial rests in a trial court's discretion and should not be reversed absent an abuse of discretion. See State v. Ahmed, 103 Ohio St.3d 27, 813 N.E.2d 637,2004-Ohio-4190, at ¶ 92; State v. Brown, 100 Ohio St.3d 51,796 N.E.2d 506, 2003-Ohio-5059. Here, we do not believe that the trial court abused its discretion. To the contrary, our review reveals that the trial court went to great lengths to ensure that the jury panel was not tainted, despite the actions of appellant and his co-defendants.
 {¶ 34} Accordingly based upon these reasons, we find no merit in the third or fourth assignment of error and they are hereby overruled.
 IV {¶ 35} Appellant asserts in his fifth assignment of error that the trial court erred by allowing testimony evidence concerning the German Village robberies. In particular, appellant claims that this evidence violated the Evid.R. 404(B) restriction against the admission of evidence concerning other crimes. We disagree. *Page 16 
 {¶ 36} Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as . identity . . ." (Emphasis added.) The admissibility of other acts evidence is carefully limited because a substantial danger exists that a jury may convict solely because it assumes that a defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. This danger increases when the other acts are similar to the charged offense, or are of an inflammatory nature as is in the case here. State v. Schaim (1992), 65 Ohio St.3d 51,59, 600 N.E.2d 661. Nevertheless, evidence of other crimes may be admissible when integral to the identification of a perpetrator. SeeState v. Lott (1990), 51 Ohio St.3d 160, 169, 555 N.E.2d 293; also seeState v. Vasson, Cuyahoga App. No. 88069, 2007-Ohio-1599, at ¶ 18;State v. Kellon (Sep. 20, 2001), Cuyahoga App. No. 78668. In the case sub judice, both victims identified the Hairstons as the men in their bedroom in the early hours of September 29 . Defense counsel vigorously challenged that identification and questions about the amount of light in the residence, the assailants' clothing as well as the perpetrators' initial misidentification.[7] Under the *Page 17 
circumstances present in the case at bar, we believe that the trial court properly allowed evidence of the Franklin County crimes to establish similarities to the Melcher robbery and to establish the perpetrators' identity. Although Cynthia Green and Melanie Pinkerton both identified appellant as one of the men who broke into their German Village homes, the most important part of their testimony included the substantial similarities to the Melcher robbery. In those cases the perpetrators ordered the victims to remove their clothing, and tied the victims to chairs with articles of clothing.[8] Also, Brenda Walker of the Columbus Police Department testified that in her eighteen years of experience, it is highly unusual for victims to be stripped of their clothing and be tied to chairs with articles of their own clothing.
 {¶ 37} After we consider the similarities between the German Village robberies and the Melcher home-invasion, we agree with the trial court's conclusion to allow the other acts evidence to establish identity. This is particularly true in light of the fact that two victims (Cynthia Green and Melanie Pinkerton) identified appellant as one of the men in their homes.
 {¶ 38} Again, the decision to admit Evid.R. 404(B) prior acts evidence rests in the trial court's sound discretion and that decision should not be reversed absent an abuse of discretion. *Page 18 State v. Parker, Columbiana App. No. 04CO44, 2005-Ohio-6777, at ¶ 20;State v. Hammond, Cuyahoga App. No. 85001, 2005-Ohio-1852, at ¶ 55;State v. Moore, Mahoning App. No. 02CA152, 2004-Ohio-2320, at ¶ 39. Considering Officer Walker's testimony concerning the unique characteristics of the four robberies, we find nothing arbitrary, unreasonable or unconscionable in the trial court's decision to admit this evidence. We also commend all three defense counsel, the prosecution and the trial court for devoting to this issue very careful and thoughtful consideration.
 {¶ 39} Accordingly, based upon the foregoing reasons we hereby overrule appellant's fifth assignment of error.
 V {¶ 40} We next consider appellant's seventh assignment of error that the cumulative effect of all the errors deprived him of a fair trial. We disagree.
 {¶ 41} The cumulative error doctrine holds that a judgment may be reversed if the cumulative effect of multiple harmless errors deprives a defendant of his constitutional rights, even though the errors individually may not rise to the level of prejudicial error. State v.Garner (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623; State v.DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus. If, however, a reviewing court finds no prior instances of error, that doctrine has no application. See State v. Bennett, Scioto App. No. 05CA2997, 2006-Ohio-2757, at ¶ 50. In the case sub judice, we have found no merit in appellant's previous assignments of error. Thus, the *Page 19 
cumulative error doctrine does not apply. Accordingly, we hereby overrule appellant's seventh assignment of error.
 VI {¶ 42} We now consider appellant's sixth assignment of error that his sentence violates State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856. In particular, appellant argues that the trial court cited as authority for his sentences statutory factors struck down as unconstitutional in Foster. We agree, but to a more limited extent than appellant argues.
 {¶ 43} The Ohio Supreme Court in Foster struck down R.C. 2929.14
(B) (imposition of non-minimum sentences) and R.C. 2929.14(E)(4) (imposition of consecutive sentences) as unconstitutional because those provisions required judicial fact-finding in violation of theSixth Amendment to the United States Constitution. 2006-Ohio-856, at paragraphs two and three of the syllabus. Now, trial courts possess the discretion to impose non-minimum sentences, as well as consecutive sentences, and are not required to explicitly state their reasons for doing so. Id. at paragraph seven of the syllabus.
 {¶ 44} Generally, any sentence based on statutory provisions found to be unconstitutional are void. Id. at ¶ 103. The remedy is to vacate that sentence and to remand the case for re-sentencing. Id. at ¶ 104. Sentences should be vacated when they appear to have been based on the statutory provisions struck down by the Ohio Supreme Court. However, we will not, as appellant urges in his brief, vacate every sentence for which a trial court *Page 20 
explains its reasons for the sentence. Rather, only if the offending statutory provisions are cited as authority for the sentence will we vacate that sentence and remand the case for re-sentencing.
 {¶ 45} With that in mind, we turn our attention to the sentencing entry and the sentencing hearing transcript. Here, nothing in the sentencing entry causes concern. The trial court did not cite either R.C. 2929.14(B) when it imposed non-minimum sentences nor R.C.2929.14(E)(4) when it ordered the sentences to be served consecutively. Also, no entry language leads us to believe that the court relied on those sections.
 {¶ 46} As for the sentencing hearing transcript, appellant cites nothing to indicate that the court considered R.C. 2929.14(B) before it imposed a non-minimum sentence. With regard to consecutive sentences, however, the following language appears in the transcript:
 "I find that consecutive terms are necessary to protect the public and to punish the offender and are not disproportionate to the conduct and the danger that the offender poses. I find that the harm was so great or unusual that a single term does not adequately reflect the seriousness of the defendant's conduct."
 {¶ 47} This language is similar to R.C. 2929.14(E)(4) and raises concern that the trial court may have relied on that statute when it ordered appellant's sentences to be served consecutively.[9]
Therefore, in consideration of the importance of *Page 21 
the Sixth Amendment issues at stake, we believe that the interests of justice are better served by vacating that portion of the sentence and remanding the case for further consideration. We emphasize that in vacating the consecutive sentences, our actions should not be construed as a comment on the underlying merits of whether such sentences may, in fact, be proper. Rather, we remand the case to ensure that if consecutive sentences are imposed, the court chooses to so without reference to R.C. 2929.14(E)(4). Thus, we hereby sustain appellant's sixth assignment of error to that limited extent.
 {¶ 48} Having sustained a portion of the sixth assignment of error, the trial court's judgment is affirmed in part and reversed in part. Appellant's conviction, and the non-minimum sentences, are hereby affirmed. However, the trial court's order that the sentences be served consecutively is hereby vacated and the case remanded for re-sentencing. *Page 22 
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered the judgment be affirmed in part, reversed in part and the cause remanded for further proceedings consistent with this opinion. Appellant to recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. Harsha, J.: Concur in Judgment Opinion
[2] The intruders disabled all but one telephone in the home which was hidden behind a decorative box.
[3] Ralph Melcher was shot in his right eye and neck. He now has an artificial eye. Bullet fragments also lodged in his neck, sinuses and bowel. Marcia Melcher was shot five times — once in her face, twice in her arms, once in her knee and once in her shoulder. The shoulder injury permanently damaged her breakial plexis and she now must keep her arm in a sling when she walks.
[4] The relationship between the three is not entirely clear from the record. It appears that Marquis and Louis are either brothers or half-brothers, and Jovaughney is apparently their cousin.
[5] Portsmouth Police Detective Lynn Brewer explained that "CODAS" is a nationwide DNA database.
[6] Marquis Hairston was sentenced to an aggregate prison term of fifty-nine (59) years — to be served consecutive to the prison Franklin County term. Jovaughny Hairston was sentenced to an aggregate term of forty-one (41) years.
[7] One of the perpetrators was described as husky or obese and none of the Hairstons fit that description. Furthermore, the Melchers thought one or more of the perpetrators might have been Hispanic. All three defendants are African-American.
[8] Ralph Melcher testified the Hairstons used scarves to tie him up. Cynthia Green testified that her assailants used bathrobe ties and belts. Melanie Pinkerton explained that neck ties were used on her. John Maransky recalled that he was tied up with scarves and neck ties.
[9] R.C. 2929.14(E)(4) states, in pertinent part, as follows:
 "If multiple prison terms are imposed . . . the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 * * * (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term . . . adequately reflects the seriousness of the offender's conduct." (Emphasis added.) *Page 1