OPINION
{¶ 1} Defendant-appellant, Louis B. Hairston, appeals the judgment of the Franklin County Court of Common Pleas, whereby appellant was convicted of four counts of aggravated robbery, first-degree felonies, in violation of R.C. 2911.01, with firearm specifications, in violation of R.C. 2941.145, and three counts of aggravated burglary, first-degree felonies, in violation of R.C. 2911.11, with firearm specifications, in violation of R.C. 2941.145. *Page 2 
 {¶ 2} Appellant's convictions stem from a series of home invasions. Pursuant to an indictment that the Franklin County Grand Jury issued, one aggravated burglary count and aggravated robbery count involved victim Cynthia Green, and another aggravated burglary count and aggravated robbery count involved victim John Maransky. In addition, one of the aggravated burglary charges involved victims Melanie Pinkerton and Gary Reames, who shared a home. Moreover, in regards to the Pinkerton-Reames home invasion, one of the aggravated robbery charges involved Pinkerton and the remaining aggravated robbery charge involved Reames. Again, each count contained firearm specifications.
 {¶ 3} The trial court handled the home invasion counts in two separate cases. In particular, the trial court handled the Green home invasion in case No. 06CR09-6900, and the home invasions for Pinkerton-Reames and Maransky in case No. 05CR11-7738.
 {¶ 4} On November 13, 2006, appellant pled guilty to the above charges and specifications at a plea hearing. The trial court accepted the guilty pleas at the hearing and found appellant guilty of the above charges and specifications. Next, at the plea hearing, plaintiff-appellee, the State of Ohio, provided the following statement of facts regarding the Green home invasion:
 * * * [Appellant] as well as his cousin and his brother Marquis Hairston and Jovaughny Hairston, entered the home of Cynthia Green * * *. They held Miss Green at gunpoint, did not allow her to clothe herself after they had taken her out of the shower. They held her there at gunpoint while they robbed her house, loaded her possessions into her luggage and subsequently into her car. They left her there tied up while they fled in her car.
(Tr. at 8.) *Page 3 
 {¶ 5} Appellee provided the following statement of facts regarding the Pinkerton-Reames home invasion:
 * * * [Appellant] as well as Marquis Hairston entered the residence of Melanie Pinkerton and Michael Reames * * *. They forced both residents to disrobe, held them, tied them up at gunpoint, made them lay there in the hallway while they proceeded to ransack the house and take their items. They loaded the items into Miss Pinkerton's vehicle and then fled the scene. * * *
(Tr. at 8-9.)
 {¶ 6} Appellee provided the following statement of facts regarding the Maransky home invasion:
 * * * [Appellant] entered [John Maransky's] home * * *, forced Mr. Maransky to disrobe, tied him up, naked, while again they ransacked his house, took his possessions, loaded them into his vehicle and fled from the scene.
(Tr. at 9.)
 {¶ 7} Appellee also mentioned the facts regarding a home invasion that appellant committed in Scioto County against Ralph and Marcia Melcher. In the Scioto County Court of Common Pleas, appellant was convicted of charges pertaining to the Melcher home invasion. According to appellee, "Ralph and Marcia Melcher were also held at gunpoint, forced to disrobe and robbed in their home." (Tr. at 10.) Appellant's counsel objected to appellee mentioning the Melcher home invasion.
 {¶ 8} The trial court scheduled the matter for sentencing and ordered a pre-sentence investigation report. When appellant talked to the individual who prepared the pre-sentence investigation report, appellant admitted his involvement in the above-noted home invasions. *Page 4 
 {¶ 9} Afterwards, the trial court held a sentencing hearing. At the sentencing hearing, the following exchange took place between appellant and the trial court:
 THE DEFENDANT: * * * I take my plea back.
 THE COURT: Yeah, the answer to that is no. * * *
 THE DEFENDANT: I feel like I shouldn't deserve this much time. * * *
(Tr. at 13.)
 {¶ 10} Appellant's counsel then explained to the trial court:
 * * * I've had a chance to talk to [appellant]. I explained to him * * * what the sentencing possibilities could be. He has told me * * * that he no longer wishes to proceed with sentencing. * * * He has decided at the ninth hour he no longer wants to proceed with entering a guilty plea and that he wishes to withdraw his previous plea of guilty and would like now to * * * proceed to trial * * *.
(Tr. at 14.)
 {¶ 11} The trial court denied appellant's motion to withdraw his guilty pleas, stating:
 * * * [O]n November 13, 2006, * * * this Court made a very extensive record at your plea. At that time, the Court went through all of your rights as a Defendant in these two cases. At that time on the record you waived the right to go to trial, you entered a guilty plea. You stated to this Court and on the record that you did so knowingly, intelligently and voluntarily and that you're proceeding with a guilty plea.
 Now we are in court today for your sentencing. Prior to this time, your attorney has gone back to tell you what discussions have taken place regarding your sentence. Now you come out to this Court and say you don't want that sentence. That is not grounds to withdraw your plea, that is not grounds to move forward with a trial.
 * * * *Page 5 
 And at this time your motion to withdraw your plea is denied, we will proceed on with sentencing.
(Tr. at 15-16.)
 {¶ 12} However, appellant's counsel made additional statements on appellant's plea withdrawal request:
 * * * I explained to [appellant] that it's at the Court's discretion as far as sentencing goes. There was discussions that there would be some range of within the 20s as far as sentencing goes. You have not sentenced him yet, I know that we need to probably hear that first, but that's where he was thinking his range would be. I told him what it could have been, what the — on the plea what the ramifications could be, how much time he could be sentenced to. Once this was explained to him, he feels that that range was much higher than what he thought it would be. Therefore, he feels that — and I explained, tried to explain that it's within the Court's jurisdiction as far as sentencing, there were no guarantees as to the exact number of years.
 After discussion with the prosecutor, with the Court, and going back and talking to my client, he felt that that range was out of range, and, therefore, he felt like that should be something that he should be able to withdraw his plea on.
(Tr. at 16-17.)
 {¶ 13} The trial court responded:
 And I'd just like to further note for the record, at the time of the plea, this Court made it very clear to [appellant] this Court makes no promises when it comes to sentencing. * * *
(Tr. at 17.)
 {¶ 14} After denying appellant's plea withdrawal motion, the trial court then allowed appellant's victims to speak. Green mentioned repeated flashbacks over the incident. Pinkerton referenced "lost health, jobs, relationships, innocence, and sometimes [she] think[s] [her] own sanity." (Tr. at 23.) *Page 6 
 {¶ 15} Next, the trial court announced the following sentence totaling 39 years imprisonment. As to the Green home invasion, the trial court sentenced appellant to ten years imprisonment for the aggravated burglary conviction and ten years imprisonment for the aggravated robbery conviction. The trial court ordered appellant to serve the sentences concurrently. The trial court then sentenced appellant to an additional three years imprisonment on the firearm specifications.
 {¶ 16} As to the Maransky home invasion, the trial court sentenced appellant to ten years imprisonment on the aggravated robbery conviction and ten years imprisonment on the aggravated burglary conviction. The trial court ordered appellant to serve the prison terms concurrently. However, the trial court did not impose a sentence on the firearm specifications that attached to such convictions.
 {¶ 17} As to the Pinkerton-Reames home invasion, the trial court ordered appellant to serve ten years imprisonment on each of the aggravated robbery convictions and ten years imprisonment on the aggravated burglary conviction. The trial court ordered appellant to serve the aggravated robbery prison terms consecutively. In addition, the trial court also imposed two consecutive three-year prison terms on each of the firearm specifications that attached to the two aggravated robbery prison terms.
 {¶ 18} The trial court ordered appellant to serve the consecutive Pinkerton-Reames aggravated robbery prison terms concurrently with both the Pinkerton-Reames aggravated burglary prison term and the concurrent Maransky home invasion prison terms. The trial court also ordered appellant to serve the Green home invasion sentence consecutive to the 20-year prison term ultimately imposed on the home invasions for Pinkerton-Reames and Maransky. *Page 7 
 {¶ 19} Lastly, the trial court ordered appellant to serve the above-noted sentence consecutive to the sentence that the Scioto County Court of Common Pleas imposed for the Melcher home invasion. As an aside, we note that, in the Scioto County case, the trial court ordered appellant to serve an aggregate of 31 years imprisonment. See State v.Hairston, Scioto App. No. 06CA3089, 2007-Ohio-3707, at ¶ 13. However, as to the Scioto County case, the Fourth District Court of Appeals, pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, remanded for resentencing appellant's consecutive sentences. SeeHairston at ¶ 42-47.
 {¶ 20} Nevertheless, as to the sentences stemming from the Franklin County home invasions, the trial court stated at the sentencing hearing:
 * * * [T]his Court does take into consideration the fact * * * that you did plea, that you did not make these victims have to go through a trial * * * The Court takes into consideration the fact that you don't have a prior felony record. These things are recognized by the Court when the Court is sentencing you.
 * * * [T]his Court has recognized the fact that you did plea, you did not make the victims have to go through the trauma of a trial, and, as such, the Court has taken that into consideration when sentencing you.
(Tr. at 30-31.)
 {¶ 21} The trial court's judgment entry for case No. 05CR11-7738 denoted a sentence that differed from the sentence that the trial court announced at the sentencing hearing. In particular, the trial court ordered appellant to serve concurrently the Pinkerton-Reames aggravated robbery sentences. As a result of such a difference, the trial court's judgment entries, combined, reflected a 29-year prison sentence for appellant. *Page 8 
 {¶ 22} Appellant appeals, raising four assignments of error:
 First Assignment of Error
 The trial court erred in overruling Appellant's motion to withdraw his guilty plea.
 Second Assignment of Error
 The trial court improperly imposed two consecutive three-year sentences for use of a firearm in a single transaction.
 Third Assignment of Error
 Retrospective application of the holding of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 violated the Due Process protections of the Fifth and Fourteenth Amendments and the Ex Post Facto clause of Article I, Section 10 of the United States Constitution.
 Fourth Assignment of Error
 The trial court abused its discretion in sentencing.
 {¶ 23} In his first assignment of error, appellant claims that the trial court erred in overruling his pre-sentence motion to withdraw his guilty pleas. We disagree.
 {¶ 24} Crim.R. 32.1 governs guilty plea withdrawals and states, in pertinent part:
 A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
 {¶ 25} "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." State v. Xie (1992), 62 Ohio St.3d 521,527. "Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." Id. Rather, generally, a trial court must conduct a hearing to determine whether there is a "reasonable and legitimate" basis for the guilty plea withdrawal. Id. *Page 9 
Ultimately, however, it is within the trial court's discretion to grant or deny a pre-sentence guilty plea withdrawal motion. Id. at paragraph two of the syllabus. Absent such an abuse of discretion, a reviewing court must affirm the trial court's decision to grant or deny a pre-sentence guilty plea withdrawal motion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} Here, as noted above, appellant originally pled guilty without having received any guarantees as to the sentence that the trial court would impose. Eventually, appellant asked to withdraw his guilty pleas at the sentencing hearing upon learning about the sentence that the trial court was about to impose. "Ohio courts have consistently held that a change of heart is deemed insufficient to justify withdrawing a guilty plea, especially where the change of heart is based upon the defendant learning what sentence a court is going to impose." State v.Glass, Franklin App. No. 04AP-967, 2006-Ohio-229, at ¶ 37. "[A] defendant who has a change of heart regarding his guilty plea should not be permitted to withdraw that plea just because he is made aware that an unexpected sentence is going to be imposed." State v. Lambros (1988),44 Ohio App.3d 102, 103. Courts have concluded as such even under the liberal standards that govern a pre-sentence plea withdrawal motion. SeeState v. Forest, Montgomery App. No. 19649, 2003-Ohio-1945, at ¶ 19-20;State v. Griffin, Cuyahoga App. No. 82832, 2004-Ohio-1246, at ¶ 15-16;State v. Bush, Greene App. No. 2004-CA-106, 2005-Ohio-4492, at ¶ 15. Accordingly, based on the above, we conclude that appellant did not *Page 10 
provide a "reasonable and legitimate" basis for his plea withdrawal motion. See Xie at 527.
 {¶ 27} We also reject appellant's contention that the trial court did not allow an adequate opportunity for a hearing on his plea withdrawal motion. As we noted, a trial court must conduct a hearing to determine whether there is a "reasonable and legitimate" basis for the guilty plea withdrawal motion. Id. However, "Ohio courts have previously held that a trial court inviting and hearing oral arguments on a motion to withdraw a guilty plea at the sentencing hearing, immediately before sentence is imposed, can constitute a full and fair hearing on that motion."Griffin at ¶ 18, citing State v. Holloman (June 22, 2001), Greene App. No. 2000CA82, and State v. Mooty, Greene App. No. 2000 CA 72, 2001-Ohio-1464; see, also, State v. Eversole, Erie App. No. E-05-073,2006-Ohio-3988, at ¶ 14 (holding that the "scope of a hearing on an appellant's motion to withdraw his guilty plea should reflect the substantive merits of the motion").
 {¶ 28} Here, the trial court ultimately gave appellant an opportunity to explain his reasons for the plea withdrawal motion. Likewise, appellant's counsel gave further explanations behind appellant's plea withdrawal motion. Nonetheless, appellant's reasons were not a "reasonable and legitimate" basis for the motion. Therefore, the trial court had no need for any further inquiry on the motion. As such, we conclude that the trial court gave full and fair consideration to appellant's plea withdrawal motion, and conducted an adequate hearing on the motion.
 {¶ 29} Similarly, we reject appellant's contention that substitute counsel would have better pursued appellant's plea withdrawal motion. First, we emphasize that *Page 11 
appellant did not ask for substitute counsel when he made the plea withdrawal motion, but, instead, allowed his counsel to argue the motion. Next, we note that, on appeal, appellant does not suggest any basis for his plea withdrawal motion in addition to the above-noted reasons stated on record. Again, such reasons did not provide a sufficient basis for the trial court to grant the motion. Therefore, appellant has not established how substitute counsel could have better pursued the plea withdrawal motion.
 {¶ 30} For these reasons, we conclude that the trial court did not abuse its discretion when it denied appellant's guilty plea withdrawal motion. Therefore, we overrule appellant's first assignment of error.
 {¶ 31} In his second assignment of error, appellant argues that we must reverse the two consecutive three-year sentences that the trial court imposed on the firearm specifications that attached to the two aggravated robbery convictions related to the Pinkerton-Reames home invasion. We agree.
 {¶ 32} Generally, a trial court must impose a prison term on a firearm specification. R.C. 2929.14(D)(1)(a). As an exception, R.C.2929.14(D)(1)(b) provides that "[a] court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of the same transaction." The Ohio Supreme Court has defined "transaction" as a "`series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" State v. Wills, 69 Ohio St.3d 690, 691, 1994-Ohio-417, quoting State v. Caldwell (Dec. 4, 1991), Summit App. No. 14720 (construing former R.C. 2929.71[B], which contained language substantially similar to R.C. 2929.14[D][1][b]). *Page 12 
 {¶ 33} Here, appellee concedes that the two Pinkerton-Reames aggravated robbery convictions were part of the same transaction and that, under R.C. 2929.14(D)(1)(b), the trial court erred by imposing more than one prison term on the firearm specifications that attached to such convictions. However, appellee contends that appellant forfeited such error because he did not object to the error at the sentencing hearing, and, therefore, precluded an opportunity for the trial court to correct the error at the hearing. See State v. Hill, 92 Ohio St.3d 191,196, 2001-Ohio-141. Thus, appellee argues that, pursuant to Crim.R. 52(B), we need not disturb the erroneous additional prison term on the Pinkerton-Reames firearm specifications absent plain error.
 {¶ 34} We agree with both parties that the trial court erred when it imposed more than one prison term for the firearm specifications applicable to the Pinkerton-Reames robbery. Under R.C. 2929.14(D)(1)(b), the court could impose only one prison term on the Pinkerton-Reames firearm specifications. The more difficult question is what remedy, if any, we may apply to correct this error.
 {¶ 35} As an initial matter, we must determine whether the erroneous Pinkerton-Reames firearm specifications sentence is "void" or "voidable." "These distinct terms have distinct consequences." State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 33 (Lanzinger, J., concurring). A void sentence is one that a court imposes despite lacking subject-matter jurisdiction or the authority to act. Payne at ¶ 27. Similarly, a trial court imposes a void sentence when it acts without authority by disregarding statutory sentencing requirements. State v.Beasley (1984), 14 Ohio St.3d 74, 75, quoting Colegrove v. Burns (1964),175 Ohio St. 437, 438 (stating that "[a] court has no power *Page 13 
to substitute a different sentence for that provided for by statute"); see, also, Payne at ¶ 29, fn. 3 (noting that "[i]t is axiomatic that imposing a sentence outside the statutory range, contrary to the statute, is outside a court's jurisdiction, thereby rendering the sentence void"); see, also, State v. Jordan, 104 Ohio St.3d 21,2004-Ohio-6085, at ¶ 23 (holding that a sentence is void when it does not contain a statutorily mandated term).
 {¶ 36} A void judgment has no legal force or effect, and any party whose rights are affected may challenge its invalidity at any time and any place. Payne at ¶ 33 (Lanzinger, J., concurring), quoting Black's Law Dictionary (8th Ed.2004) 861; see, also, Gahanna v.Jones-Williams (1997), 117 Ohio App.3d 399, 404. In a successful challenge to a void sentence, an appellate court has no authority "to do anything but announce its lack of jurisdiction and dismiss." Pratts v.Hurley, 102 Ohio St.3d 81, 2004-Ohio-1980, at ¶ 21, citing Steel Co. v.Citizens for a Better Environment (1998), 523 U.S. 83, 94.
 {¶ 37} Conversely, a voidable sentence is one that a court had jurisdiction to impose, but was imposed irregularly or erroneously.Payne at ¶ 27. A party challenges a voidable sentence in accordance with laws and principles of appellate procedure, such as forfeiture of error and the plain error doctrine. See Payne at ¶ 22-30; see, also, State v.Peeks, Franklin App. No. 05AP-1370, 2006-Ohio-6256, at ¶ 9 (recognizing that voidable error can be forfeited). And it is "`[v]alid until annulled.'" Payne at ¶ 33 (Lanzinger, J., concurring), citing Black's Law Dictionary (8th Ed.2004) 1605.
 {¶ 38} Here, as we stated, the trial court acted beyond its authority by disregarding statutory requirements under R.C. 2929.14(D)(1)(b) when it imposed more than one sentence on the firearm specifications attached to the Pinkerton-Reames *Page 14 
aggravated robbery. Therefore, the trial court had no jurisdiction to impose the sentence, and the erroneous sentence is void. SeePayne at ¶ 27; Jordan at ¶ 23; Beasley at 75. Thus, contrary to appellee's contentions, because a party may challenge a void sentence at any time, appellant did not forfeit his right to challenge his void sentence on appeal, and we may remedy the void sentence irrespective of the plain error doctrine.
 {¶ 39} We next consider whether our conclusion that the erroneous Pinkerton-Reames firearm specifications sentence is void precludes us from remanding other aspects of appellant's sentences. Specifically, we acknowledge that the trial court neglected to impose a sentence for firearm specifications on counts related to the Maransky home invasion. Because the Maransky home invasion was a separate transaction from the Pinkerton-Reames home invasion, R.C. 2929.14(D)(1)(b) did not preclude the trial court from imposing a separate sentence on the firearm specifications related to the Maransky home invasion. Indeed, the firearm specifications sentence on the Maransky sentence was mandatory under R.C. 2929.14(D)(1)(a). Thus, recognizing that the Maransky home invasion is itself a single transaction, the trial court was required to impose one three-year prison term on the firearm specifications related to the Maransky home invasion. R.C. 2929.14(D)(1)(a) and (b); 2941.145.
 {¶ 40} Appellee asserts that, upon reversing the Pinkerton-Reames firearm specifications sentences, we may "order a resentencing in which that error could be corrected by switching that 3-year term to the right count, i.e., one of the counts arising from the Maransky home invasion." However, the sentence on the Maransky firearm specifications is not under review in this appeal, given that appellant did not appeal that *Page 15 
sentence, and appellee filed no cross-appeal. Although we may vacate, modify or remand an unlawful sentence, pursuant to R.C. 2953.08(G)(2), we may do so only with respect to the sentence appealed by a party. SeeState v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, paragraph three of the syllabus; State v. Evans, 113 Ohio St.3d 100, 2007-Ohio-861, at ¶ 10. Such is the case even with void sentences. See Saxon at ¶ 3 (holding as above in regards to a trial court's decision to impose a void sentence of four-years imprisonment on a defendant for a fourth-degree felony, even though the maximum penalty for a fourth-degree felony is 18 months).
 {¶ 41} In so concluding, we reject appellee's contention thatSaxon and Evans are inapplicable. In arguing the inapplicability ofSaxon and Evans, appellee claims that the firearm specifications sentences here involved an interdependent consideration on which specifications merged. Appellee also claims that the consecutive sentences imposed here required interdependent consideration. Thus, according to appellee, a consideration of the Maransky firearm specifications would be a necessary component in a remanded sentencing hearing on the Pinkerton-Reames firearm specifications.
 {¶ 42} Appellee is essentially asking us to apply the "`sentencing packaging doctrine,'" which requires a "court to consider the sanctions imposed on multiple offenses as the components of a single, comprehensive sentencing plan." Saxon at ¶ 5. According to this doctrine, "an error within the sentencing package as a whole, even if only on one of multiple offenses, may require modification or vacation of the entire sentencing package due to the interdependency of the sentences for each offense." Id. at ¶ 6, citing United States v.Clements (C.A.6, 1996), 86 F.3d 599, 600-601. *Page 16 
 {¶ 43} However, the Ohio Supreme Court has explicitly held that "[t]he sentencing-packaging doctrine has no applicability to Ohio sentencing laws: the sentencing court may not employ the doctrine when sentencing a defendant, and appellate courts may not utilize the doctrine when reviewing a sentence or sentences." Saxon at ¶ 10.
 {¶ 44} Moreover, the Ohio Supreme Court specifically rejected the argument raised by appellee that a trial court necessarily imposes consecutive sentences interdependently. In particular, the Ohio Supreme Court stated:
 * * * Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time. Under R.C. 2929.14(A), the range of available penalties depends on the degree of each offense. For instance, R.C. 2929.14(A)(1) provides that "[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine or ten years." * * * R.C. 2929.14(A)(2) provides a different range for second-degree felonies. In a case in which a defendant is convicted of two first-degree felonies and one second-degree felony, the statute leaves the sentencing judge no option but to assign a particular sentence to each of the three offenses, separately. The statute makes no provision for grouping offenses together and imposing a single, "lump" sentence for multiple felonies.
 * * * Instead of considering multiple offenses as a whole and imposing one, overarching sentence to encompass the entirety of the offenses * * * a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense. See R.C. 2929.11 through R.C. 2929.19 [as remained effective following State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856]. Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively. * * * * *Page 17 
(Emphasis and footnote omitted.) Saxon at ¶ 8-9. Furthermore, inEvans, the Ohio Supreme Court reaffirmed its rejection of the sentencing-packaging doctrine as applied to a sentence on a firearm specification. Evans at ¶ 18.
 {¶ 45} Thus, pursuant to Evans and Saxon, we only have authority to vacate and remand for resentencing the trial court's sentences on the Pinkerton-Reames firearm specifications, and we cannot order the trial court to also consider on resentencing its failure to impose a prison sentence on the Maransky firearm specifications. We emphasize, however, that we have not considered or determined whether appellee can still seek to rectify the trial court's failure to impose the requisite sentence on the Maransky firearm specifications.
 {¶ 46} Nevertheless, in the final analysis, we conclude that the trial court issued a void sentence in regards to the firearm specifications that attached to the Pinkerton-Reames home invasion. Accordingly, we sustain appellant's second assignment of error.
 {¶ 47} In his third assignment of error, appellant contends that, in regards to appellant's sentencing, the trial court's application ofFoster violated appellant's rights as guaranteed by the Ex Post Facto and the Due Process Clauses of the United States Constitution. Thus, appellant argues that he was entitled to the imposition of minimum, concurrent prison sentences. We disagree.
 {¶ 48} We have previously rejected the precise constitutional arguments that appellant raises here. See State v. Lariva, Franklin App. No. 06AP-758, 2007-Ohio-1012, at ¶ 11; State v. Satterwhite, Franklin App. No. 06AP-666, 2007-Ohio-798, at ¶ 18; State v. Cunningham, Franklin App. No. 06AP-317, 2007-Ohio-2785, at ¶ 4-5; State v. *Page 18 Jones, Franklin App. No. 07AP-218, 2007-Ohio-4458, at ¶ 2. Accordingly, we conclude that the trial court did not violate appellant's above-noted constitutional rights when it sentenced appellant. As such, we overrule appellant's third assignment of error.
 {¶ 49} In his fourth assignment of error, appellant argues that we must reverse his sentences because, in contravention of Ohio's felony statutes, the trial court "undertook a formulaic if not mechanistic approach" to sentencing appellant. We disagree.
 {¶ 50} In ruling on appellant's claim, we review whether clear and convincing evidence establishes that appellant's felony sentences are contrary to law. See State v. Burton, Franklin App. No. 06AP-690,2007-Ohio-1941, at ¶ 19. Here, the trial court indicated in its judgment entries that, when sentencing appellant, it considered all applicable statutory factors, which included the purposes and principles of sentencing set forth in R.C. 2929.11, and the seriousness and recidivism factors set forth in R.C. 2929.12. In addition, at the sentencing hearing, the trial court acknowledged that it considered that appellant had no prior felony record and "that [appellant] did not make these victims have to go through a trial." (Tr. at 30.) Accordingly, we conclude that clear and convincing evidence does not establish that appellant's sentences are contrary to law through an improper "formulaic" and "mechanistic" approach in contravention of Ohio's felony-sentencing statutes.
 {¶ 51} Next, appellant contends that his sentences constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution and under Section 9, Article I of the Ohio Constitution. We disagree. *Page 19 
 {¶ 52} In State v. Weitbrecht (1999), 86 Ohio St.3d 368, 370-371, the Ohio Supreme Court recognized:
 The Eighth Amendment to the Constitution of the United States provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9, Article I of the Ohio Constitution is couched in identical language. Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. Robinson v. California (1962), 370 U.S. 660, 676 * * *. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In McDougle v. Maxwell (1964), 1 Ohio St.2d 68 * * *, this court stressed that Eighth Amendment violations are rare. We stated that "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." Id. at 70 * * *
 {¶ 53} Moreover, the Ohio Supreme Court in Weitbrecht stated that for a cruel and unusual punishment violation to occur:
 * * * "[T]he penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." Id. See, also, State v. Chaffin (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus.
Weitbrecht at 371.
 {¶ 54} Courts use a three-part analysis to assess whether the penalty imposed is disproportionate to the offense committed:
 "First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive.
 * * * Third, courts may find it useful to compare the *Page 20 
sentences imposed for commission of the same crime in other jurisdictions." * * *
Weitbrecht at 371, quoting Solem v. Helm (1983), 463 U.S. 277, 290-291.
 {¶ 55} A reviewing court need not reach the second and third prongs of the three-part test, except in the rare case when a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate. Weitbrecht at 373, fn. 4, citing Harmelin v. Michigan (1991), 501 U.S. 957, 1005 (Kennedy, J., concurring); State v. Keller (June 1, 2001), Montgomery App. No. 18411.
 {¶ 56} Appellant did not raise the cruel and unusual punishment argument below. Therefore, we may only reverse appellant's sentences if, under the cruel and unusual punishment analysis, his sentences rise to the level of plain error. Crim.R. 52(B); State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68.
 {¶ 57} Here, acknowledging a difference between the sentences that the trial court announced at the sentencing hearing and the sentences that the trial court stated in its judgment entries, we note that we consider here the sentences that the trial court pronounced in its judgment entries. See State v. Berry (June 29, 1999), Franklin App. No. 97AP-964 (recognizing that a trial court speaks through its judgment entries and, therefore, we look to the judgment entry when determining the sentence that the trial court imposed). Upon doing so, we conclude that appellant's prison sentences are not "`shocking to any reasonable person.'" Weitbrecht at 371, quoting McDougle v. Maxwell (1964),1 Ohio St.2d 68, 70. Similarly, we conclude that appellant's prison sentences are not grossly disproportionate to appellant's offenses.Weitbrecht at 371, fn. 4. Specifically, appellant and his accomplices subjected numerous victims to terror *Page 21 
inside their own homes. Appellant and his accomplices, with the aid of a firearm, restrained the liberty of their disrobed victims, and they ransacked their victims' homes to steal their possessions. Additionally, we consider that some of appellant's victims are experiencing lasting effects from appellant's crimes. As an example, Green has repeated flashbacks over the incident, and Pinkerton has "lost health, jobs, relationships, innocence, and sometimes [she] think[s] [her] own sanity." (Tr. at 23.) And, as the victims testified, the home invasions impacted the entire community.
 {¶ 58} Based on the above, and considering the first prong of the above-noted three-part test, we do not find that this is the rare case where a threshold comparison of the crimes appellant committed and the sentences imposed leads to an inference that the two are grossly disproportionate. Thus, we need not consider the second and third prongs of the three-part test in our cruel and unusual punishment analysis. SeeWeitbrecht at 373, fn. 4. Therefore, we conclude that the trial court did not commit error, let alone plain error, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, or Section 9, Article I of the Ohio Constitution when it sentenced appellant. Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 59} In summary, we overrule appellant's first, third, and fourth assignments of error, but we sustain appellant's second assignment of error, which involved the erroneous additional prison term on the Pinkerton-Reames firearm specifications. As such, we affirm in part and reverse in part the judgments of the Franklin County Court of Common Pleas. Having reversed the trial court's judgments in regards to the erroneous additional three-year prison term on the Pinkerton-Reames firearm specifications, we *Page 22 
exercise our authority under R.C. 2953.08(G)(2) to modify appellant's sentence, and we eliminate the one erroneous three-year prison term on the Pinkerton-Reames firearm specifications. As a result, only one three-year prison term remains on the Pinkerton-Reames firearm specifications.
Judgments affirmed in part, reversed in part, and sentencemodified.
KLATT, J., concurs.
TYACK, J., dissents.